McGEE, Chief Judge.
 

 *363
 
 Thomas Bentley ("Plaintiff") appeals from an opinion and award of the North Carolina Industrial Commission ("the Commission") determining he was not an "employee" of Jonathan Piner Construction ("Piner Construction"), as that term is used in the North Carolina Workers' Compensation Act,
 
 N.C. Gen. Stat. § 97-1
 

 et seq
 
 . In an opinion published 20 September 2016, this Court determined that the plain language of
 
 N.C. Gen. Stat. § 97-84
 
 (2015) was violated when the Commission based its opinion and award on an opinion and order by a deputy commissioner who was not present at the hearing and did not hear the evidence.
 
 Bentley v. Piner Construction
 
 , --- N.C. App. ----, ----,
 
 790 S.E.2d 379
 
 , 382 (2016). Defendants petitioned this Court for rehearing, which we granted. Upon rehearing, we hold that Plaintiff did not preserve his argument regarding the proper interpretation of N.C.G.S. § 97-84 due to his failure to raise it before the Commission. We further hold that the Commission did not err in concluding Plaintiff was not an employee of Piner Construction, nor did it err in holding that Piner Construction was not Plaintiff's "statutory employer" pursuant to
 
 N.C. Gen. Stat. § 97-19
 
 . Accordingly, we affirm the order of the Commission.
 

 I.
 
 Background
 

 In early 2014, Plaintiff and his friend, George Tucker ("Tucker"), were working "side jobs" in the construction industry in and around Newport, North Carolina. At the time, Plaintiff held himself out as the owner and operator of Bentley Construction and Maintenance ("Bentley Construction") and had distributed business cards that advertised his business services as "[r]oofing, siding, painting, pressure washing ...
 

 *364
 
 [r]emodels and renovations, [and] sheetrock work
 
 *163
 
 and repairs." Plaintiff also operated a website under the Bentley Construction name.
 

 One day in February 2014, Plaintiff and Tucker were driving around in Plaintiff's truck, which had the words "Bentley Construction and Maintenance" displayed in a decal on its side, looking for work. While driving about, Plaintiff and Tucker happened upon a jobsite in the Breakwater subdivision in Newport, North Carolina (the "Breakwater jobsite").
 
 [1]
 
 Plaintiff pulled his truck over and attempted to find the person in charge to ask if he and Tucker could work on the Breakwater jobsite. Plaintiff and Tucker encountered Jonathan Piner ("Piner"), the owner and operator of Piner Construction.
 

 Piner Construction was the subcontractor responsible for,
 
 inter alia
 
 , the framing of the houses being constructed at the Breakwater jobsite. After talking for a brief period of time about what type of experience Plaintiff and Tucker had in the construction industry, Plaintiff handed Piner a Bentley Construction business card and asked Piner to call if he had any framing work available. Piner responded that if "some work [came] up ... that [he] couldn't put [his] guys on," he would call Plaintiff.
 

 A few weeks later, Piner "felt like [he] might need to make a phone call to somebody" to assist on the framing job at the Breakwater jobsite because he believed Piner Construction would not be able to complete all of the framing work. Piner contacted Plaintiff, and gave him the option of being paid at a fixed price or being paid by the hour. Plaintiff replied that he would "get back" to Piner on his preferred method of payment. After hearing from Piner, Plaintiff contacted, among others, Tucker and Shawn Noling ("Noling") to request their assistance on the Breakwater jobsite.
 

 When Plaintiff, Tucker, and Noling arrived at the Breakwater jobsite to begin work, Piner produced the blueprints for the house to be constructed. Noling introduced himself to Piner, read the blueprints,
 
 [2]
 
 and then suggested the hourly rate that each man should be paid: Noling was paid $18.00 per hour, Tucker was paid $14.00 per hour, and Plaintiff was paid $12.00 per hour. Piner characterized Noling as the
 
 *365
 
 "lead man" and the "man running the show" due to his expertise and experience in the construction industry, and characterized Plaintiff as the "low man on the totem pole" due to his relative inexperience. Piner asked Plaintiff if he wanted a single check written to him for all of the men he had brought with him to work on the Breakwater jobsite "because [Plaintiff] was operating as [Bentley Construction]." Plaintiff requested that Piner pay each man individually, and Piner agreed to do so.
 

 Tucker testified that he, Plaintiff, and Noling were able to set their own hours, including making decisions about when breaks were to be taken. At the Breakwater jobsite, Plaintiff brought and used his own tools, including a compressor, a nail gun, and a "sawzall." As the work progressed, Plaintiff, Tucker, and Noling were "struggling for tools" because the tools brought by Plaintiff were inadequate, so Piner brought tools from them to use. When Noling realized another worker was needed to complete the job, he enlisted the help of C.P. Hollingsworth ("Hollingsworth"). Noling testified that he did not need to ask Piner's permission to hire Hollingsworth, and that Plaintiff similarly could have hired another person to work on the Breakwater jobsite without consulting Piner. Noling also testified that Piner did not instruct him to frame the house in a specific manner, and that he, Plaintiff, Tucker, and Hollingsworth used their own special skills, knowledge, and training to frame the house. According to Noling, Piner was not interested in the method employed to frame the house, but was only interested in "[t]he finished product."
 

 *164
 
 Plaintiff worked as a "cut man" on the Breakwater jobsite. While working on 3 March 2014, Plaintiff was injured when a nail he was prying from a board broke loose and struck him in the right eye. As we explained in our previous opinion in this case,
 

 [f]ollowing the injury, Plaintiff filed a workers' compensation claim with the Commission on 25 March 2014. Piner Construction, along with its insurance carrier, Stonewood Insurance Company (collectively, "Defendants") denied the claim for compensation, contending the injury was non-compensable under the Workers' Compensation Act because Plaintiff was not an employee of Piner Construction on the date of the accident. The claim was assigned for a hearing before Deputy Commissioner Mary C. Vilas ("Deputy Vilas").
 

 Bentley
 
 , --- N.C. App. at ----,
 
 790 S.E.2d at 380
 
 . A hearing was held before Deputy Vilas on 5 December 2014. At the hearing, Tucker, Noling,
 
 *366
 
 and Piner testified. Plaintiff was not present for, and did not testify at, the hearing.
 

 Near the end of the [5 December 2014] hearing, Deputy Vilas suggested that the jurisdictional question of whether Plaintiff was an employee of Piner Construction be bifurcated from the merits of Plaintiff's claim, because she would no longer be at the Commission after 1 February 2015. Deputy Vilas noted that she had many cases to write, but she would "try" to decide the jurisdictional question in the present case before she left the Commission. An order bifurcating the jurisdictional and merits issues was filed 9 December 2014 by Deputy Vilas, and stated that bifurcation "was appropriate given the issues for hearing and that medical testimony by deposition is not scheduled until 26 January 2015 and [Deputy Vilas] will not be at the Commission after 1 February 2015." Deputy Vilas filed an order closing the record and declaring that the jurisdictional issue was "ready for a decision" on 12 January 2015.
 

 An opinion and order was entered 16 February 2015 by Deputy Commissioner William H. Shipley ("Deputy Shipley"). Deputy Shipley concluded as a matter of law that the Commission lacked jurisdiction over Plaintiff's claim because he was not an employee of Piner Construction at the time his injury was sustained.
 

 Id
 
 . at ----,
 
 790 S.E.2d at 380
 
 . Plaintiff filed a notice of appeal to the Commission from Deputy Shipley's order. The Commission acknowledged Plaintiff's notice of appeal, and provided Plaintiff with a Form 44. Plaintiff returned the Form 44, which listed the ways in which Plaintiff believed Deputy Shipley had erred in his opinion and order. The Commission issued an opinion an award on 9 October 2015 concluding as a matter of law that: (1) the Commission lacked jurisdiction over Plaintiff's claim because he was not an employee of Piner Construction at the time his injury was sustained; and (2) Piner Construction was not Plaintiff's "statutory employer" pursuant to N.C.G.S. § 97-19. Plaintiff appeals.
 

 II.
 
 Analysis
 

 Plaintiff has raised three issues in his appeal to this Court. Plaintiff argues the Commission erred by: (1) basing its opinion and award on an opinion and order by a deputy commissioner who was not present at the hearing and did not hear the evidence; (2) failing to find and conclude that Plaintiff was an employee of Piner Construction at the
 
 *367
 
 time of Plaintiff's injury; and (3) failing to find and conclude that Piner Construction should be held liable as a statutory employer pursuant to N.C.G.S. § 97-19.
 

 A.
 
 Waiver of
 
 N.C. Gen. Stat. § 97-84
 
 Argument
 

 We must first consider whether Plaintiff's argument regarding the proper interpretation of N.C.G.S. § 97-84 has been preserved for appellate review. Plaintiff has raised his statutory interpretation argument for the first time in this Court. Whether N.C.G.S. § 97-84 permits a deputy commissioner to issue an opinion and award in a case over which the deputy commissioner did not personally preside was not raised in the evidentiary hearing before Deputy Vilas, was not mentioned nor decided in the opinion and award filed by Deputy Shipley, and was not an issue included in Plaintiff's application for review to the Commission. Generally, a party
 
 *165
 
 may not raise an issue on appeal if that argument was not first raised in the trial court. N.C.R. App. P. 10(a)(1). Precedents of this Court hold that "where a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts."
 
 State v. Holliman
 
 ,
 
 155 N.C. App. 120
 
 , 123,
 
 573 S.E.2d 682
 
 , 685 (2002) (citations and quotations omitted);
 
 see also
 

 Weil v. Herring
 
 ,
 
 207 N.C. 6
 
 , 10,
 
 175 S.E. 836
 
 , 838 (1934) ("the law does not permit parties to swap horses between courts in order to get a better mount [on appeal].").
 

 This prohibition against raising new arguments on appeal not presented to the trial court in the first instance has been applied by this Court to cases arising from the Industrial Commission.
 
 Floyd v. Exec. Personnel Group
 
 ,
 
 194 N.C. App. 322
 
 , 329,
 
 669 S.E.2d 822
 
 , 828 (2008). When a party appeals a deputy commissioner's opinion and award to the Commission within the time permitted, "the full Commission shall review the award, and, if good ground be shown therefor, reconsider the evidence, receive further evidence, rehear the parties or their representatives, and, if proper, amend the award[.]"
 
 N.C. Gen. Stat. § 97-85
 
 (2015). After receiving a notice of appeal, the Commission supplies the appellant with a Form 44 Application for Review, in which the appellant must "stat[e] the grounds for its appeal 'with particularity.' The appellant must then file and serve the completed Form 44 and an accompanying brief within the specified time limitations 'unless the Industrial Commission, in its discretion, waives the use of the Form 44.' "
 
 Cooper v. BHT Enters.
 
 ,
 
 195 N.C. App. 363
 
 , 368,
 
 672 S.E.2d 748
 
 , 753 (2009) (citations omitted);
 
 see also
 
 04 NCAC 10A .0701(d) (2015).
 

 In the present case, Plaintiff sent a letter and notice of appeal from Deputy Shipley's opinion and order to the Commission. After receiving
 
 *368
 
 an acknowledgment of his appeal, Plaintiff filed a Form 44, along with a brief, neither of which raised the issue of whether a deputy commissioner may issue an opinion and award when he or she was not present at the hearing and did not hear the evidence. We hold that Plaintiff's failure to raise this issue before the Commission bars his ability to raise it in this Court in the first instance. Therefore, we deem this argument waived.
 

 B.
 
 Employee/Employer Relationship
 

 Plaintiff argues the Commission erred by concluding that Plaintiff was not an employee of Piner Construction at the time of the accident. We disagree. In order to maintain a proceeding for workers' compensation, "the claimant must have been an employee of the party from whom compensation is claimed."
 
 McCown v. Hines
 
 ,
 
 353 N.C. 683
 
 , 686,
 
 549 S.E.2d 175
 
 , 177 (2001) (citation omitted). "[T]he existence of an employer-employee relationship at the time of the injury constitutes a jurisdictional fact."
 

 Id.
 

 As our Supreme Court has held,
 

 the finding of a jurisdictional fact by the Industrial Commission is not conclusive upon appeal even though there be evidence in the record to support such finding. The reviewing court has the right, and the duty, to make its own independent findings of such jurisdictional facts from its consideration of all the evidence in the record.
 

 Lucas v. Li'l Gen. Stores
 
 ,
 
 289 N.C. 212
 
 , 218,
 
 221 S.E.2d 257
 
 , 261 (1976). In
 
 Hayes v. Elon College
 
 ,
 
 224 N.C. 11
 
 , 16,
 
 29 S.E.2d 137
 
 , 140 (1944), our Supreme Court set forth an eight-factor test to guide courts in determining when a plaintiff is an independent contractor:
 

 The person employed (a) is engaged in an independent business, calling, or occupation; (b) is to have the independent use of his special skill, knowledge, or training in the execution of the work; (c) is doing a specified piece of work at a fixed price or for a lump sum or upon a quantitative basis; (d) is not subject to discharge because he adopts one method of doing the work rather than another; (e) is not in the regular employ of the other contracting party; (f) is free to use such assistants as he may think proper; (g) has full control over such assistants; and (h) selects his own time.
 

 Hayes
 
 ,
 
 224 N.C. at 16
 
 ,
 
 29 S.E.2d at 140
 
 (citations omitted). Not all factors are required, and no one factor is controlling over
 
 *166
 
 another; the
 
 Hayes
 
 factors "are considered along with all other circumstances to determine
 
 *369
 
 whether in fact there exists in the one employed that degree of independence necessary to require his classification as independent contractor rather than employee."
 

 Id.
 

 "The claimant has the burden of proof that the employer-employee relation existed at the time the injury by accident occurred."
 
 Lucas
 
 ,
 
 289 N.C. at 218
 
 ,
 
 221 S.E.2d at 261
 
 .
 

 Applying the
 
 Hayes
 
 factors to the present case, and considering "all other circumstances" relevant, we hold the Commission correctly determined that Plaintiff was an independent contractor, not an employee, of Piner Construction at the time of his injury. First, Plaintiff was engaged in the independent calling of being a "cut man" in the framing process, and held himself out as the owner and operator of Bentley Construction. There was evidence presented at the hearing that Bentley Construction was more an aspiration than an actual business-Tucker testified that the business was "a dream" and "a joke" and Noling similarly testified that it was fair to characterize Bentley Construction as "a dream." Plaintiff nevertheless distributed a Bentley Construction business card to Piner, held himself out to Piner as the owner and operator of Bentley Construction, and placed a Bentley Construction decal on his truck. Further, Noling testified that when he arrived at the Breakwater jobsite, he considered himself a part of the Bentley Construction "crew." Considering the evidence presented, we find that Plaintiff was engaged in an independent business, calling, or occupation.
 

 Second, there is no direct evidence regarding whether Plaintiff himself had the independent use of his special skill, knowledge, or training in the execution of the work done at the Breakwater jobsite, as Plaintiff did not testify at the hearing. However, testimony from Noling and Tucker suggests that he did, indeed, have the independent use of his special skill, knowledge, or training in the execution of the work done at the Breakwater jobsite. Noling testified Piner did not instruct him on how to frame the house that was being constructed and that he, as a member of Bentley Construction, used his own special skills, knowledge, and training to frame the house. Tucker similarly testified that no one told him how to frame the house that he, Noling, Hollingsworth, and Plaintiff were helping to construct. This evidence suggests that Plaintiff, like Noling and Tucker, had the independent use of his special skill, knowledge or training. At a minimum, Plaintiff has failed to meet his burden of proof as to this factor.
 
 Lucas
 
 ,
 
 289 N.C. at 218
 
 ,
 
 221 S.E.2d at 261
 
 .
 

 Third, Piner Construction paid Plaintiff at an hourly rate of $12.00. Although being paid an hourly rate is more suggestive of an employee, it is not determinative.
 
 Hayes
 
 ,
 
 224 N.C. at 16
 
 ,
 
 29 S.E.2d at
 
 140 ;
 
 see also
 

 *370
 

 Youngblood v. North State Ford Truck Sales
 
 ,
 
 321 N.C. 380
 
 , 384-85,
 
 364 S.E.2d 433
 
 , 438 (1988). We also note that Piner gave Plaintiff the option of being paid a lump sum, and asked Plaintiff whether he would like to be paid a single check for all of the men he had brought with him "because he was operating as [Bentley Construction]." Plaintiff refused both offers.
 

 Fourth, the evidence presented at the hearing suggested Plaintiff was not subject to discharge because he adopted one method of completing the work rather than another. Noling testified that Piner never instructed him on the method in which to frame the house, and that Piner's only concern was that the finished product correlate with the blueprints and change orders. Piner similarly testified that he was unconcerned with how the house was framed, so long as the finished project was completed consistent with the specifications provided by the general contractor.
 

 Fifth, the evidence suggested that Plaintiff was not in the "regular employ" of Piner Construction. Tucker testified that, prior to the work on the Breakwater jobsite, he had never done any work for Piner Construction, and Piner testified he had never met or worked with Plaintiff prior to Plaintiff approaching him in February 2014 and Plaintiff's subsequent work on the Breakwater jobsite.
 

 Sixth, the evidence suggested that Plaintiff was free to use such assistants as he thought was proper. After Piner called Plaintiff to
 
 *167
 
 ask him to work on the Breakwater jobsite, Plaintiff contacted Noling and Tucker to enlist their help on the project. Noling also testified that, after he realized another person would be needed to work on the Breakwater jobsite, he was able to hire Hollingsworth without Piner's permission, and that Plaintiff similarly could have hired an additional person to work on the Breakwater jobsite without consulting Piner. Piner echoed this sentiment, testifying that Plaintiff could have hired workers and added them to the Piner Construction payroll "without any communication" with him.
 

 Seventh, the evidence suggested that Plaintiff did not have full control over the assistants he arranged to work with him on the Breakwater jobsite. However, the power to control the assistants was not wielded by Piner or anyone from Piner Construction, but rather by Noling, the "lead man" who was himself contacted by Plaintiff to work on the Breakwater jobsite. Although Plaintiff did not have complete control over his assistants, neither did Piner or anyone from Piner Construction. On balance, this evidence does not factor into the consideration of whether Plaintiff was an employee or independent contractor.
 

 *371
 
 Finally, the evidence suggested that Plaintiff, Tucker, Noling, and Hollingsworth collectively selected their own time. Tucker testified he was able to make his own hours, and Noling similarly testified that no one instructed him on when to begin and finish work for the day or when to take a lunch break. Piner confirmed this testimony, stating that he did not control the time when Plaintiff, Tucker, Noling, and Hollingsworth worked.
 

 In considering all these factors along with the entire record in this case, we hold that Plaintiff has not satisfied his burden of demonstrating that he was an employee of Piner Construction at the time of his injury. Applying the
 
 Hayes
 
 factors, we conclude that Plaintiff was an independent contractor not subject to the provisions of the Workers' Compensation Act. Due to Plaintiff's status as an independent contractor, the Commission did not err in determining that it lacked jurisdiction over the present case.
 

 C.
 
 Statutory Employer
 

 In his final argument, Plaintiff contends the Commission erred in concluding Piner Construction was not Plaintiff's "statutory employer." Specifically, Plaintiff contends "if anyone subcontracted the [Breakwater] framing job from Piner Construction, it was [Noling]. As such, [Piner Construction] would be liable for [Plaintiff's] injuries" pursuant to N.C.G.S. § 97-19 unless Piner Construction obtained proof of Noling's workers' compensation insurance. We disagree and find N.C.G.S. § 97-19 inapplicable to the present case.
 

 N.C.G.S. § 97-19, as relevant to Plaintiff's argument, provides:
 

 Any principal contractor, intermediate contractor, or subcontractor who shall sublet any contract for the performance of any work without obtaining from such subcontractor or obtaining from the Industrial Commission a certificate, issued by a workers' compensation insurance carrier, or a certificate of compliance issued by the Department of Insurance to a self-insured subcontractor, stating that such subcontractor has complied with G.S. 97-93 for a specified term, shall be liable ... to the same extent as such subcontractor would be if he were subject to the provisions of this Article for the payment of compensation and other benefits under this Article on account of the injury or death of any employee of such subcontractor due to an accident arising out of and in the course of the performance of the work covered by such subcontract.
 

 *372
 

 N.C. Gen. Stat. § 97-19
 
 (2015). The "manifest purpose" of N.C.G.S. § 97-19 "is to protect employees of irresponsible and uninsured subcontractors by imposing ultimate liability on principal contractors, intermediate contractors, or subcontractors, who ... have it within their power, in choosing subcontractors, to pass upon their financial responsibility and insist upon appropriate compensation protection for their workers."
 
 Greene v. Spivey
 
 ,
 
 236 N.C. 435
 
 , 443,
 
 73 S.E.2d 488
 
 , 494 (1952). N.C.G.S. § 97-19 "applies only when two conditions are met. First, the injured employee must be working for a subcontractor
 
 *168
 
 doing work which has been contracted to it by a principal contractor. Second, the subcontractor does not have workers' compensation insurance coverage covering the injured employee."
 
 Spivey v. Wright's Roofing
 
 ,
 
 225 N.C. App. 106
 
 , 118,
 
 737 S.E.2d 745
 
 , 753 (2013).
 

 As this Court has held, "[N.C.]G.S. § 97-19, by its own terms, cannot apply unless there is first a contract for the performance of work which is then sublet."
 
 Cook v. Norvell-Mackorell Real Estate Co.
 
 ,
 
 99 N.C. App. 307
 
 , 310,
 
 392 S.E.2d 758
 
 , 760 (1990). In the present case, Plaintiff provided no evidence of the contract between the owner of the Breakwater jobsite and the principal contractor, the subcontract between the principal contractor and Piner Construction, or any subcontract between Piner Construction and Noling.
 

 However, even if Plaintiff is correct that Piner Construction had subcontracted the framing job to Noling-as noted above, a contention with little support in the record-Plaintiff has not shown that he was an employee of Noling. No evidence was presented at the hearing that tended to establish an employer-employee relationship between Noling and Plaintiff. To the contrary, the evidence showed that Plaintiff himself solicited and received the framing job from Piner under the Bentley Construction name and, thereafter, contacted Noling to work on the Breakwater jobsite with him. While Noling testified he was the "lead man" on the project, no evidence tended to show that Noling was Plaintiff's employer. As we have held, applying the
 
 Hayes
 
 factors, Defendant was an independent contractor of Piner Construction while working at the Breakwater jobsite.
 

 Even if we were to assume that Piner Construction subcontracted the framing project to Noling, and were to further assume some type of relationship between Plaintiff and Noling, Plaintiff would at most be an independent contractor of Noling, not one of his employees. North Carolina's statutory employer statute only applies to injured subcontractors and their employees, not independent contractors of a subcontractor, placing Plaintiff outside the protections afforded by N.C.G.S. § 97-19.
 

 *373
 

 See
 

 Greene v. Spivey
 
 ,
 
 236 N.C. 435
 
 , 444,
 
 73 S.E.2d 488
 
 , 494 (1952) (holding N.C.G.S. § 97-19 "is not applicable to an independent contractor").
 

 Plaintiff directs this Court to
 
 Davis v. Taylor-Wilkes Helicopter Servs.
 
 ,
 
 145 N.C. App. 1
 
 ,
 
 549 S.E.2d 580
 
 (2001) in support of his contention that Piner Construction was his statutory employer pursuant to N.C.G.S. § 97-19. In
 
 Davis
 
 , the plaintiff, Carlton Davis ("Davis") worked as an independent contractor for the defendant, Taylor-Wilkes Helicopter Service, Inc. ("Taylor-Wilkes").
 
 145 N.C. App. at 2-3
 
 , 549 S.E.2d at 581. Davis was injured in the course of his work for Taylor-Wilkes when a "highboy sprayer" he was operating tipped over.
 
 Id.
 
 at 3,
 
 549 S.E.2d at 581
 
 . Davis pursued a claim for workers' compensation, and this Court found Taylor-Wilkes to be Davis' statutory employer. After examining the language of N.C.G.S. § 97-19, this Court concluded that, because there was "no evidence that Taylor-Wilkes obtained the necessary certificate" certifying Davis was covered by workers' compensation insurance, "under
 
 N.C. Gen. Stat. § 97-19
 
 , Taylor-Wilkes remained liable for [Davis'] compensable injuries while he was working under a subcontract from Taylor-Wilkes."
 

 Id.
 

 at 10
 
 , 549 S.E.2d at 585.
 

 In the present case, and unlike in
 
 Davis
 
 , Plaintiff does not argue he was a subcontractor of Piner Construction, but instead argues Noling was a subcontractor of Piner Construction, and that Plaintiff was an employee of Noling. As discussed above, Plaintiff did not produce evidence to show either that Noling was Piner Construction's subcontractor, or that Plaintiff was an employee of Noling. The evidence instead tended to suggest that Plaintiff, Noling, and Tucker were each independent contractors of Piner Construction. We therefore find
 
 Davis
 
 inapposite to the present case, and hold that Piner Construction was not Plaintiff's statutory employer pursuant to N.C.G.S. § 97-19.
 

 III.
 
 Conclusion
 

 Plaintiff did not preserve his argument regarding whether N.C.G.S. § 97-84 permits a deputy commissioner to issue an opinion and award in a case in which the deputy commissioner did not hear the evidence due to his failure to raise it before the Commission.
 

 *169
 
 The Commission did not err in holding Plaintiff to be an independent contractor, nor did it err in finding that Piner Construction was not Plaintiff's statutory employer pursuant to N.C.G.S. § 97-19. Accordingly, we affirm the judgment of the Industrial Commission.
 

 AFFIRMED.
 

 Judges CALABRIA and STROUD concur.
 

 [1]
 

 We note that there is some discrepancy in the record about the location and name of the jobsite at issue. Tucker identified the jobsite as the "Phillips Landing subdivision" in Morehead City, North Carolina, while Piner identified the jobsite as the "Breakwater subdivision" in Newport, North Carolina. To avoid confusion and for ease of reading, we will simply refer to the jobsite as the "Breakwater jobsite."
 

 [2]
 

 At the hearing, Noling agreed that he "read the blueprints as a member of [the Bentley Construction] crew."