IN THE COURT OF APPEALS OF NORTH CAROLINA

2022-NCCOA-289

No. COA21-452

Filed 3 May 2022

Gaston County, No. 19CVS709

JAMES A. JOHNSTON and PHYLLIS M. JOHNSTON, Plaintiffs,

v.

TIMOTHY PYKA and JANICE PYKA, Defendants.

Appeal by plaintiffs from order entered 21 March 2021 by Judge Gregory R. Hayes in Gaston County Superior Court. Heard in the Court of Appeals 11 January 2022.

*John M. Kirby for plaintiffs-appellants.*

*Thomas B. Kakassy for defendants-appellees.*

GORE, Judge.

¶ 1    This matter concerns a contractual dispute over the sale of real property and several landlord/tenant claims. We affirm in part; reverse in part, and remand for further proceedings not inconsistent with this opinion.

**I.    Factual and Procedural Background**

¶ 2    Defendants, Timothy and Janice Pyka, are the owners of a house and lot in Belmont, North Carolina. This house was their former residence, and they made it available for rental in 2013. In their efforts to rent the property out, defendants

contracted with Leslie Dale of Re/Max Realty. Defendants relied upon Ms. Dale to find suitable tenants for the property.

¶ 3        At the recommendation of Ms. Dale, defendants entered into a residential rental agreement with plaintiffs James and Phyllis Johnston on 5 December 2013 for the period 5 December 2013 to 31 December 2014. The parties contracted to extend this lease by written agreement on 22 February 2015, for the period 1 January 2015 until 31 January 2016. On 13 January 2016, the parties contracted for another extension of the lease for the period 1 February 2016 to 31 January 2018. Defendants later discovered that Ms. Dale is the sister of plaintiff James Johnston.

¶ 4        In early 2018, plaintiffs inquired about purchasing the home from defendants. Without defendants' knowledge or authorization, Ms. Dale drafted a purported extension of the lease until December 2020. This document was not signed by defendants nor seen by them until after this lawsuit had commenced.

¶ 5        On 2 March 2018, defendants sent plaintiffs a registered letter, confirming their understanding that plaintiffs were not interested in buying the home and asking that they vacate by 2 April 2018. On 6 April 2018, defendants emailed plaintiffs and indicated: an acknowledgement of the month-to-month rental status, to be extended only until 1 June 2018; that the most recent payment was short by $200.00; and that, if plaintiffs were serious in their expressed desire to buy the house, defendants were still willing to sell.

¶ 6    In April 2018, the parties executed a Contract for Purchase of defendants' home. The due diligence period began on 12 April 2018 and extended through 5:00 p.m. on 16 May 2018. Plaintiffs alleged that on or about 15 April 2018, a severe thunderstorm impacted the Belmont, North Carolina region, and the thunderstorm produced hailstones that substantially damaged the property's roof and caused water intrusion issues. On or about 1 May 2018, plaintiffs notified defendants about the storm damage and requested that defendants repair the property.

¶ 7    On or about 8 June 2018, plaintiffs arranged for CSH Inspections to inspect the property, including the hail damage. CSH Inspections prepared a report that detailed their findings. The report noted that water intrusion had taken place. Defendants alerted their insurance company to the claims of plaintiffs, in addition to notifying an independent roofing company, neither of which found any significant hail damage or other significant damage.

¶ 8    On 18 July 2018, defendants received a letter from plaintiffs that alleged the roof damage triggered "a breach of the existing agreement," and instead of offering to "proceed to closing," threated a lawsuit. Plaintiffs alleged that, as of 23 May 2018, they had performed all conditions precedent and fulfilled all obligations under the Offer to Purchase and Contract, and were ready, willing, and able to complete the transaction. Defendants contend that plaintiffs have refused to complete the transaction and failed to demonstrate that they had the financing, ability, or

inclination to ever complete the transaction, despite requests from their attorney for proof of financing.

¶ 9        On 19 February 2019, plaintiffs filed a Complaint that alleged breach of contract, breach of warranty of habitability, unfair and deceptive trade practices, and sought damages and specific performance of the parties' contract for sale of real property.

¶ 10        Defendants filed an Answer and Counterclaims on 11 June 2019. Defendants filed counterclaims for tortious interference with contract, fraud, and summary ejectment. Defendants' contractual counterclaims were based on an assertion that plaintiffs' action was frivolous and had caused defendants to lose money from the sale of the house to other potential purchasers.

¶ 11        The fraud claim was based on an allegation that plaintiffs had represented that the house sustained hail damage. The summary ejectment claim alleged that plaintiffs were tenants at will or trespassers and should be ordered to vacate the premises. Defendants also filed a Third-Party Complaint against Ms. Dale that they later settled.

¶ 12        Following the filing of pleadings and during the pendency of this action, and up until December 2020, plaintiffs paid a monthly amount of rent, $200.00 short of the amount requested by defendants, and defendants have taken that money. On 14 December 2020, defendants refused additional payments and demanded once again

that plaintiffs vacate the premises. Defendants have accepted no rent since the last payment of plaintiffs on 1 December 2020.

¶ 13 Defendants filed a Motion for Partial Summary Judgment on the issue of liability, and plaintiffs filed a Motion for Summary Judgment. On 23 March 2021, the trial court granted defendants' Motion for Partial Summary Judgment on liability and denied plaintiffs' Motion. The trial court reserved the matter of damages owed to defendants for later determination. The trial court dismissed plaintiffs' claims and further ordered plaintiffs to vacate the premises within 30 days. On 15 April 2021, plaintiffs filed written notice of appeal to this Court.

## II. Interlocutory Appeal

¶ 14 We must first address whether plaintiffs' appeal is premature and subject to dismissal.

¶ 15 In this case, the trial court determined that defendants are entitled to summary judgment on their claims. It entered an Order granting defendant's Motion for Partial Summary Judgment on the issue of liability while reserving the matter of damages for later determination. It also denied plaintiffs' Motion for Summary Judgment and Motion for Injunctive Relief, dismissing plaintiffs' claims in their entirety.

¶ 16 "An order or judgment is interlocutory if it is made during the pendency of an action and does not dispose of the case but requires further action by the trial court

in order to finally determine the entire controversy." *N.C. Dep't of Transp. v. Page*, 119 N.C. App. 730, 733, 460 S.E.2d 332, 334 (1995) (citation omitted). "A grant of partial summary judgment, because it does not completely dispose of the case, is an interlocutory order from which there is ordinarily no right of appeal." *Bartlett v. Jacobs*, 124 N.C. App. 521, 523-24, 477 S.E.2d 693, 695 (1996) (quotation marks and citation omitted). "Ordinarily, an appeal from an interlocutory order will be dismissed as fragmentary and premature unless the order affects some substantial right and will work injury to appellant if not corrected before appeal from final judgment." *Stanback v. Stanback*, 287 N.C. 448, 453, 215 S.E.2d 30, 34 (1975) (citations omitted).

¶ 17        Plaintiffs argue this Court has jurisdiction pursuant to N.C. Gen. Stat. §§ 7A-27(b)(3) and 1-277(a), because the trial court's decision affects a substantial right. Specifically, plaintiffs assert their claim for specific performance is intertwined with defendants' pending counterclaims. Plaintiffs contend defendants' counterclaims are based on an argument that plaintiffs were wrongfully in possession of the property, and that plaintiffs' claims prevented defendants from selling the house. On appeal, plaintiffs assert they had a right to purchase the property. It is therefore plaintiffs' contention that, without immediate appeal, there is a possibility of inconsistent verdicts and multiple trials on the same issues.

¶ 18        "[T]he right to avoid a trial is generally not a substantial right, but the right

to avoid two trials on the same issue may be." *Page*, 119 N.C. App. at 735, 460 S.E.2d at 335 (citation omitted). In determining what constitutes a substantial right, "[i]t is usually necessary to resolve the question in each case by considering the particular facts of that case and the procedural context in which the order from which appeal is sought was entered." *Bernick v. Jurden*, 306 N.C. 435, 439, 293 S.E.2d 405, 408 (1982) (*purgandum*). "Essentially a two-part test has developed—the right itself must be substantial and the deprivation of that substantial right must potentially work injury to plaintiff if not corrected before appeal from final judgment." *Goldston v. Am. Motors Corp.*, 326 N.C. 723, 726, 392 S.E.2d 735, 736 (1990) (citation omitted). "The test is satisfied when overlapping issues of fact between decided claims and those remaining create the possibility of inconsistent verdicts from separate trials." *CBP Res., Inc. v. Mountaire Farms, Inc.*, 134 N.C. App. 169, 172, 517 S.E.2d 151, 154 (1999) (citation omitted).

¶ 19        Here, the trial court resolved the issue of liability as to all claims in this case. Where "the only remaining issue is that of damages[,] . . . there is no danger of inconsistent verdicts. Therefore, no substantial right will be affected pending the trial court's consideration of the remaining issue." *Id.*

¶ 20        Nonetheless, this Court may exercise our supervisory jurisdiction to review a nonappealable interlocutory order. N.C. Gen. Stat. § 1-278 provides: "Upon an appeal from a judgment, the court may review any intermediate order involving the merits

and necessarily affecting the judgment." "Appellate review pursuant to G.S. § 1-278 is proper under the following conditions: (1) the appellant must have timely objected to the order; (2) the order must be interlocutory and not immediately appealable; and (3) the order must have involved the merits and necessarily affected the judgment." *Brooks v. Wal-Mart Stores, Inc.*, 139 N.C. App. 637, 641, 535 S.E.2d 55, 59 (2000) (citation omitted). All three conditions must be met. *Id.* at 642, 535 S.E.2d at 59.

¶ 21 Here, plaintiffs immediately objected to the 23 March 2021 Order by appealing it. As previously discussed, an order granting partial summary judgment on the issue of liability while reserving the issue of damages for later determination is interlocutory and not immediately appealable. Finally, the 23 March 2021 Order dismissed all of plaintiffs' claims and resolved the issue of liability for all of defendants' remaining counterclaims. Thus, the Order involved the merits and necessarily affected the judgment because it "substantially decided the primary issues in contention . . . ." *Tinajero v. Balfour Beatty Infrastructure, Inc.*, 233 N.C. App. 748, 758, 758 S.E.2d 169, 176 (2014); *see also Gaunt v. Pittaway*, 139 N.C. App. 778, 783, 534 S.E.2d 660, 663 (2000). Therefore, this Court may exercise jurisdiction over this appeal pursuant to § 1-278.

### III. Standard of Review

¶ 22 North Carolina Civil Procedure Rule 56(c) allows summary judgment to be "rendered on the issue of liability alone although there is genuine issue as to the

amount of damages." "Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quotation marks and citation omitted). "Under de novo review, we consider the matter anew and freely substitute our own judgment for that of the lower tribunal." *Barrow v. D.A.N. Joint Venture Props. of N.C., LLC*, 232 N.C. App. 528, 530, 755 S.E.2d 641, 644 (2014) (*purgandum*).

¶ 23 "The moving party has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law." *Hyman v. Efficiency, Inc.*, 167 N.C. App. 134, 137-38, 605 S.E.2d 254, 257 (2004) (citation omitted). "All inferences are to be drawn against the moving party and in favor of the opposing party. Likewise, on appellate review of an order for summary judgment, the evidence is considered in the light most favorable to the nonmoving party." *Garner v. Rentenbach Constructors, Inc.*, 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999) (quotation marks and citations omitted).

## IV.    Breach of Contract

¶ 24 Plaintiffs argue the trial court erred in granting partial summary judgment in favor of defendants on plaintiffs' claim for breach of contract. Specifically, plaintiffs contend the trial court misconstrued a critical portion of the Offer to Purchase and

Contract for sale of the real property at issue, which expressly allocates risk of loss to the seller in the event of damage by fire or other casualty prior to closing. In plaintiffs' estimation, there is a genuine issue of material fact as to whether the roof sustained hail damage, and if it did, plaintiffs are entitled to specific performance with an adjustment in the sale price for the cost of repairing the roof. We disagree.

¶ 25 "Interpreting a contract requires the court to examine the language of the contract itself for indications of the parties' intent at the moment of execution." *State v. Philip Morris USA Inc.*, 359 N.C. 763, 773, 618 S.E.2d 219, 225 (2005) (citation omitted).

> Where the language of a contract is plain and unambiguous, the construction of the agreement is a matter of law; and the court may not ignore or delete any of its provisions, nor insert words into it, but must construe the contract as written, in the light of the undisputed evidence as to the custom, usage, and meaning of its terms.

*Martin v. Martin*, 26 N.C. App. 506, 508, 216 S.E.2d 456, 457-58 (1975) (citation omitted). "However, it is a fundamental rule of contract construction that the courts construe an ambiguous contract in a manner that gives effect to all of its provisions, if the court is reasonably able to do so." *McKinnon v. CV Indus.*, 213 N.C. App. 328, 334, 713 S.E.2d 495, 500 (2011) (quotation marks and citation omitted).

¶ 26 In our review of the Offer to Purchase and Contract agreement, we note the following provisions are relevant to resolving plaintiffs' risk of loss argument:

Repair/Improvement Negotiations/Agreement: Buyer acknowledges and understands that unless the parties agree otherwise, THE PROPERTY IS BEING SOLD IN ITS CURRENT CONDITION. Buyer and Seller acknowledge and understand that they may, but are not required to, engage in negotiations for repairs/improvements to the Property. Buyer is advised to make any repair/improvement requests in sufficient time to allow repair/improvement negotiations to be concluded prior to the expiration of the Due Diligence Period. Any agreement that the parties may reach with respect to repairs/improvements shall be considered an obligation of the parties and is an addition to this Contact and as such, must be in writing and signed by the parties in accordance with Paragraph 20.

. . .

CLOSING SHALL CONSTITUTE ACCEPTANCE OF THE PROPERTY IN ITS THEN EXISTING CONDITION UNLESS PROVISION IS OTHERWISE MADE IN WRITING.

. . .

CONDITION OF PROPERTY AT CLOSING: Buyer's obligation to complete the transaction contemplated by this Contract shall be contingent upon the Property being in substantially the same or better condition at Closing as on the date of this offer, reasonable wear and tear excepted.

RISK OF LOSS: The risk of loss or damage by fire or other casualty prior to Closing shall be upon Seller. If the improvements on the Property are destroyed or materially damaged prior to Closing, Buyer may terminate this Contract by written notice delivered to Seller or Seller's agent and the Earnest Money Deposit and any Due Diligence Fee shall be refunded to Buyer. In the event Buyer does NOT elect to terminate this Contract, Buyer shall be entitled to receive, in addition to the Property, any

of Seller's insurance proceeds payable on account of the damage or destruction applicable to the Property being purchased. Seller is advised not to cancel existing insurance on the Property until after confirming recordation of the deed.

¶ 27 We conclude that the language of the contract is clear and unambiguous. If plaintiffs are dissatisfied with their due diligence inspections, or any other matter regarding material damage to the condition of the property, they may proceed to closing, negotiate repairs, or terminate the contract. If there is material damage to the property—and they do *not* elect to terminate the contract—they have a right to receive any of defendants' insurance proceeds.

¶ 28 Here, any alleged hail damage to the roof of the property is not a genuine issue of material fact precluding summary judgment. The record does not show the existence of any recoverable insurance proceeds, and the parties did not agree upon terms for improvement or repair to the property. Plaintiffs were permitted to walk away from the transaction if they were not satisfied with the condition of the property, and there were no insurance proceeds available to recover. Instead, they filed suit to compel specific performance.

¶ 29 The trial court did not err in concluding plaintiffs are not entitled to specific performance. "If the language is clear and only one reasonable interpretation exists, the courts must enforce the contract as written; they may not, under the guise of construing an ambiguous term, rewrite the contract or impose liabilities on the

parties not bargained for and found therein." *Hodgin v. Brighton*, 196 N.C. App. 126, 129, 674 S.E.2d 444, 446 (2009) (quotation marks and citations omitted). Partial summary judgment in favor of defendants on plaintiffs' claim for breach of contract was appropriate in this case.

## V. Implied Warranty of Habitability

¶ 30 Plaintiffs argue the trial court erred in dismissing their claims for breach of the implied warranty of habitability. Defendants respond with two arguments: (1) no landlord-tenant relationship existed at the time of the hearing; and (2) there is no evidence in the record to support plaintiffs' claim for breach of the implied warranty of habitability. We address these arguments as follows.

¶ 31 Pursuant to § 42-42(a)(2), a landlord is required to "[m]ake all repairs and do whatever is necessary to put and keep the premises in a fit and habitable condition." Additionally, § 42-42(a)(4) provides that a landlord must:

> [m]aintain in good and safe working order and promptly repair all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other facilities and appliances supplied or required to be supplied by the landlord provided that notification of needed repairs is made to the landlord in writing by the tenant, except in emergency situations.

¶ 32 First, we note that defendants acknowledge plaintiffs were tenants for a period immediately preceding the commencement of this action. Defendants stated in their affidavit:

3.  That this house was our former residence, and that we made it available for rental in 2013.

. . .

6.  That, as the Complaint alleges, and after at least two unsuccessful efforts to find suitable renters, we entered into a residential rental agreement with the Plaintiffs on [5 December 2013], for the period [5 December 2013] to [31 December 2014].

. . .

8.  The Complaint alleges, and we agree, that the written rental agreement was extended for another two years, until [31 January 2018].

. . .

21.  Our understanding is that: the contract for purchase in no way entitles the Plaintiffs to be in our house; that the purported lease extension, never being executed, was void from the beginning, and the date covered by the extension has passed; that the Plaintiffs were holdovers at best; and that the Plaintiffs have no rights to be in our house.

22.  On [14 December 2020], our present attorney, at our direction, sent the letter attached to this Affidavit, demanding that the Plaintiffs vacate the premises and refusing the acceptance of any further rent.

23.  To date, the Plaintiffs remain in our house.

24.  To date, we have accepted no rent since the last payment of the Plaintiffs on [1 December 2020].

This evidence is sufficient to show that, pursuant to a written lease agreement, plaintiffs were tenants of defendants until the end of 2018. Despite the absence of a valid written lease extension, plaintiffs remained in defendants' house, and

defendants accepted payment of rent through the end of 2020. Thus, a landlord-tenant relationship existed for a period preceding the commencement of this action.

¶ 34 Next, defendants contend there is no evidence in the record to support plaintiffs' allegations. We agree.

¶ 35 Under the North Carolina Rules of Civil Procedure, summary judgment will only be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." § 1A-1, Rule 56(c). "By making a motion for summary judgment, a defendant may force a plaintiff to produce a forecast of evidence demonstrating that the plaintiff will be able to make out at least a prima facie case at trial." *Boudreau v. Baughman*, 322 N.C. 331, 342, 368 S.E.2d 849, 858 (1988) (citation omitted). "All inferences of fact from the proofs offered at the hearing must be drawn against the movant and in favor of the party opposing the motion." *Id.* at 343, 368 S.E.2d at 858 (citation omitted).

¶ 36 Here, plaintiffs fail to plead or forecast any evidence that would successfully demonstrate a Chapter 42 violation. Plaintiffs' Complaint and Affidavit contain conclusory statements about unspecified electrical issues, violations of zoning ordinances and building code. The averments in plaintiffs' affidavit mirror the those found in their Complaint. Plaintiffs forecast of evidence shows:

28. That the Defendants have failed to keep the premises in a fit and habitable condition in:

> a. refusing to repair electrical issues with the Property;
>
> b. failing and refusing to maintain the Property in a habitable condition per zoning ordinance and building code;
>
> c. failing and refusing to make appropriate repairs to the Property's roof as necessary to address the water leaks;
>
> d. failing to address and repair a malfunctioning air conditioning system; and
>
> e. failing to take measures to remove vermin from the Property.

29. That on numerous occasions, [plaintiffs] complained to the Defendants of these issues, and the Defendants have failed and refused to address or correct the issues.

30. That instead of the [sic] addressing or correcting the issues, the Defendants responded in retaliation by wrongfully threatening to prematurely terminate our tenancy.

Rule 56(e) provides that an adverse party, when responding to a motion for summary judgment, must set forth specific facts showing that there is a genuine issue for trial. N.C. R. Civ. P. 56(e). No specific facts appear in the record to substantiate a claim that water leaks, a malfunctioning air conditioning system, or vermin presented a triable issue of material fact for a Chapter 42 violation.

Moreover, there is no indication that defendants received written notice of any

needed repairs or if the conditions constituted an emergency. *See* § 42-42(a)(4). "Rule 56(e) clearly precludes any party from prevailing against a motion for summary judgment through reliance on such conclusory allegations unsupported by facts." *Nasco Equip. Co. v. Mason*, 291 N.C. 145, 152, 229 S.E.2d 278, 283 (1976). Therefore, the trial court properly allowed defendants' motion for summary judgment on plaintiffs' claim for breach of the implied warranty of habitability.

## VI. Summary Ejectment

¶ 39      In this case, defendants filed a counterclaim for summary ejectment seeking an order for plaintiffs to vacate the premises. Plaintiffs argue the trial court lacked jurisdiction to summarily eject them. Plaintiffs also contend they were deprived of the protective provisions within Article 3 of Chapter 42. We disagree.

### A. Subject Matter Jurisdiction

¶ 40      We first address plaintiffs' argument that the superior court lacked subject matter jurisdiction to order summary ejectment in this case. The issue of subject matter jurisdiction can be raised at any time, even for the first time on appeal. *Huntley v. Howard Lisk Co.*, 154 N.C. App. 698, 700, 573 S.E.2d 233, 235 (2002) (citation omitted). "Whether a trial court has subject-matter jurisdiction is a question of law, reviewed de novo on appeal." *McKoy v. McKoy*, 202 N.C. App. 509, 511, 689 S.E.2d 590, 592 (2010) (citation omitted).

¶ 41      Section 7A-240 provides that, except for the original jurisdiction vested in our

Supreme Court,

> original general jurisdiction of all justiciable matters of a
> civil nature . . . is vested in the aggregate in the superior
> court division and the district court . . . . Except in respect
> of proceedings in probate and the administration of
> decedents' estates, the original civil jurisdiction so vested
> in the trial divisions is vested concurrently in each division.

§ 7A-240 (2021). In applying this statute to summary ejectment proceedings, this

Court held that

> when the legislature created the district court division and
> gave it concurrent original jurisdiction over all matters
> except probate and matters of decedents' estates, it did not
> thereby divest the superior court division of any of its
> original jurisdiction. Hence, . . . *the superior court division
> has original jurisdiction over summary ejectment actions.*

*E. Carolina Farm Credit, ACA v. Salter*, 113 N.C. App. 394, 399, 439 S.E.2d 610, 612

(1994) (emphasis added). Thus, the trial court possessed jurisdiction to rule on

summary ejectment in this case.

**B. Statutory Argument**

¶ 42    Next, we consider whether plaintiffs' argument regarding the proper

application of §§ 42-25.6, 42-26-36.3, has been preserved for appellate review. After

reviewing the record, including the transcript from the motions hearing held on 15

March 2021, we are unable to identify any procedural argument regarding summary

ejectment raised at the trial level. "Generally, a party may not raise an issue on

appeal if that argument was not first raised in the trial court." *Bentley v. Jonathan*

*Piner Constr.*, 254 N.C. App. 362, 367, 802 S.E.2d 161, 164-65 (2017); *see also* N.C.R. App. P. 10(a)(1). "[W]here a theory argued on appeal was not raised before the trial court, the law does not permit parties to swap horses between courts in order to get a better mount in the appellate courts." *State v. Holliman*, 155 N.C. App. 120, 123, 573 S.E.2d 682, 685 (2002) (quotation marks and citations omitted). Therefore, we deem this argument waived.

## VII.    Remaining Counterclaims

Plaintiffs argue the trial court erred in granting partial summary judgment in favor of defendants on their claims for, *inter alia*, tortious interference with contract and fraud. Defendants do not respond to this issue.

"[S]ummary judgment is a drastic remedy, one to be approached with caution." *Billings v. Joseph Harris Co.*, 27 N.C. App. 689, 696, 220 S.E.2d 361, 367 (1975). It is only proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law." § 1A-1, Rule 56(c). "In determining whether a genuine issue of material fact exists, the court must view all material furnished in support of and in opposition to the motion for summary judgment in the light most favorable to the party opposing the motion." *Bradshaw v. McElroy*, 62 N.C. App. 515, 518, 302 S.E.2d 908, 911 (1983) (citation omitted).

¶ 45        To establish a claim for tortious interference with contract, a plaintiff must

show:

> (1) a valid contract between the plaintiff and a third person
> which confers upon the plaintiff a contractual right against
> a third person; (2) the defendant knows of the contract; (3)
> the defendant intentionally induces the third person not to
> perform the contract; (4) and in doing so acts without
> justification; (5) resulting in actual damage to plaintiff.

*Beverage Sys. of the Carolinas, LLC v. Associated Bev. Repair, LLC*, 368 N.C. 693,

700, 784 S.E.2d 457, 462 (2016) (citation omitted).  Here, an examination of the record

reveals that defendants have not forecast evidence necessary to satisfy any essential

element of this claim.

¶ 46        As to defendants' claim for fraud, "the following essential elements of

actionable fraud are well established: (1) False representation or concealment of a

material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4)

which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v.

Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974) (citations omitted).

¶ 47        In the pleadings, defendants assert that plaintiffs: (1) falsely represented the

roof to be substantially damaged by hail as a pretext for filing this action; (2) knew

or should have known this representation was false; and (3) defendants have been

damaged in an amount exceeding $25,000.00.  Plaintiffs responded that there was

substantial hail damage to the residence and furnished an Inspection Report, which

indicated a potential structural concern where water entry had taken place. After hearing from both parties' counsel at the motions hearing, the trial court expressly stated that, "during the due diligence period it appears that there may have been some hail damage to the property. And I say, there may have been some hail damage to the property, because that's disputed."

¶ 48          When the evidence is viewed in a light most favorable to the nonmovant, defendants failed to carry their burden on this issue as well. It is not the duty of a trial court hearing a motion for summary judgment to decide an issue of fact, but rather to determine whether a genuine issue as to any material fact exists. *Lee v. Shor*, 10 N.C. App. 231, 233-34, 178 S.E.2d 101, 103 (1970). Regarding the claim for fraud, whether the roof was substantially damaged by hail is a disputed issue of material fact, and there are gaps in the forecast of evidence as to whether defendants were in fact deceived by plaintiffs' alleged false representation. We conclude that defendants are not entitled to summary judgment on this issue.

## VIII.     Conclusion

¶ 49          For the foregoing reasons, the trial court properly dismissed plaintiffs' claims for breach of contract and breach of the implied warranty of habitability. The superior court has jurisdiction over summary ejectment proceedings. However, plaintiffs failed to raise any objection or argument as to the application of Article 3 of Chapter 42 at the trial level. The trial court erred by granting partial summary

judgment in favor of defendants on their claims for tortious interference with contract and fraud.  We affirm in part, reverse in part, and remand for further proceedings.


AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

Chief Judge STROUD and Judge TYSON concur.