IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-192

Filed 3 September 2025

N.C. Industrial Commission, I.C. No. 14-716075

DEBRA GAIL M. FUNDERBURK, Widow and Administratrix of the Estate of
MARION RALPH FUNDERBURK, Deceased Employee,

     Plaintiff,

       v.

CONTINENTAL TIRE THE AMERICAS, Employer, self-insured, and GENERAL
TIRE, INC./GENCORP, INC., Employer, LIBERTY MUTUAL INSURANCE.
COMPANY, Carrier,

     Defendants.

Appeal by Plaintiff from Opinion and Award entered 13 November 2023 by the

North Carolina Industrial Commission. Heard in the Court of Appeals 5 November

2024.

       *Wallace and Graham, P.A., by Edward L. Pauley, for Plaintiff-Appellant.*

       *Fox Rothschild LLP, by Jeri L. Whitfield, Kip David Nelson, and Patrick M.
Kane, for Defendant-Appellee Continental Tire the Americas.*

       *Mullen Holland & Cooper, P.A., by John H. Russell, Jr., for Defendant-Appellee
Liberty Mutual Insurance Company.*

       HAMPSON, Judge.

**Factual and Procedural Background**

Debra Gail M. Funderburk (Plaintiff) appeals from the Opinion and Award of the North Carolina Industrial Commission (the Commission) dismissing her workers' compensation claim on behalf of the estate of Marion R. Funderburk (Decedent). Plaintiff's claim alleges Decedent suffered from his exposure to asbestos during his employment with Continental Tire the Americas (Defendant). Decedent was diagnosed with and died of lung cancer. The Commission dismissed the case, concluding Plaintiff's claim was barred by Commission orders in five "bellwether" cases in which the Commission found that claimants had failed to meet their burden of showing the asbestos level in the factory was sufficient to cause their alleged asbestos-related diseases. Plaintiff appeals from the dismissal of her claim.

The Record tends to show the following:

Defendant and its predecessor operated a tire manufacturing factory in Charlotte from the 1960s until 2006. Beginning in 2008, more than 150 former employees brought workers' compensation claims alleging they each developed one or more compensable asbestos-related diseases caused by prolonged exposure to asbestos in the factory. Each claimant was represented by the same counsel, and the cases were consolidated for hearing before the Industrial Commission (the Consolidated Cases).

Due to the number of claimants and the common issues among them, the parties agreed to a "bellwether" procedure. In 2010, prior to the filing of Plaintiff's individual claim in 2014, the parties agreed that six representative cases (the

Bellwether Cases) would be tried first. As described in the Opinion and Award resolving the Bellwether Cases, the parties agreed all evidence regarding general issues common to all claims was to be part of the record for all Consolidated Cases "to the extent the evidence was applicable to each Plaintiff's issues." Fully resolving the Bellwether Cases, including any appeals, before litigating the remaining cases was intended to ensure "the parties would be in a better position to evaluate the remaining claims." "The remaining [Consolidated Cases] could then be potentially resolved, or they could proceed to abbreviated hearings for the introduction of evidence regarding their individual medical and employment information." This agreement, entered into while the case was assigned to Deputy Commissioner George Glenn II, was not at that time memorialized in a written order.

Deputy Commissioner Stephen Gheen substituted for Deputy Commissioner Glenn prior to any evidence being taken. The Bellwether Cases were tried in a consolidated manner before Deputy Commissioner Gheen over thirty-eight hearing days beginning 14 February 2011 and concluding 18 February 2013. During these hearings, the parties presented evidence specific to the Bellwether Cases as well as evidence relating to issues common to all Consolidated Cases, including common theories of asbestos exposure. The parties did not present evidence specific to any of the non-Bellwether plaintiffs.

On 1 July 2011, while the Bellwether Cases were being heard, Plaintiff's counsel moved that an additional six cases be consolidated and set for hearing. That

motion argued the Commission "indicated that the cases will be tried in groups of six or more" and that "[i]it would now be appropriate to schedule the hearings for the second group of claimants." Defendant opposed the motion and moved to consolidate all of the pending cases for the purpose of addressing liability issues and to stay further trials pending appeal of the Bellwether Cases. Defendant argued the motion was at odds with the bellwether arrangement: the parties had agreed to fully resolve the Bellwether Cases before proceeding on the others because there was common evidence which could be used in all cases, and the resolution of the Bellwether cases would put the parties in a better position to resolve most cases without further hearings. Any case with "special issues" could then be tried on the special issues only. On 25 August 2011, Deputy Commissioner Gheen denied the plaintiffs' motion to consolidate six additional cases for hearing.

On 29 September 2011, Deputy Commissioner Gheen held a hearing on Defendant's motion to consolidate and conferenced with counsel for the parties. During the hearing, the Deputy Commissioner proposed a plan to consolidate the non-Bellwether cases for hearing. Following the resolution of the Bellwether Cases, the parties would appear before the Deputy Commissioner and present additional evidence in the cases that could not be resolved upon only the evidence introduced in the Bellwether Cases. Again, no order was entered concerning the bellwether procedure. The Deputy Commissioner granted Defendant's motion and consolidated the Bellwether Cases with the other 146 cases. The only order entered appearing to

4

concern this plan was entered by Deputy Commissioner Gheen on 29 November 2011. That order recognized that the Bellwether Cases had been consolidated with the 146 other claims and ordered that "the common testimony taken and developed during the course of [the evidentiary hearings in the Bellwether Cases] will be admissible in all consolidated claims."

One of the Bellwether Plaintiffs voluntarily dismissed their claims during the hearing period, leaving five Bellwether Cases for the Commission to resolve.

Decedent was diagnosed with lung cancer in 2012 and died on 2 January 2013. On 4 March 2014, following the evidentiary hearings in the Bellwether Cases but before the Deputy Commissioner's Opinion and Award resolving those cases, Plaintiff initiated this case by filing a Form 18B Claim by Employee, Representative, or Dependent for Benefits for Lung Disease. The filing asserted a claim for asbestosis, lung cancer, and death as a result of Decedent's employment with Defendant.

After most of the evidence had been presented in the Bellwether Cases, Deputy Commissioner Gheen resigned from the Commission, and the Consolidated Cases were assigned to Deputy Commissioner James C. Gillen on 15 April 2015. On 26 October 2016 the parties, including Plaintiff, entered into a consent order stipulating that no parties objected to the case being decided by Deputy Commissioner Gillen despite the majority of evidence having been originally heard by Deputy Commissioner Gheen.

On 19 December 2016, Deputy Commissioner Gillen entered an order denying the claims of the Bellwether Plaintiffs. Those plaintiffs appealed to the Full Commission, which on 25 January 2018 by Opinion and Award upheld the deputy commissioner's denial of the claims in the five Bellwether Cases.

In its Opinion and Award, the Full Commission made findings specific to each of the Bellwether Plaintiffs, as well as findings common to all claims, which ostensibly included all Consolidated Plaintiffs.[1] It found, based on the common evidence, the Consolidated Plaintiffs had not shown they were "exposed to asbestos in such form and quantity and used with such frequency as to cause or significantly contribute to the development of asbestosis." It found they were not exposed to levels of asbestos significant enough to support a claim from damaged pipe insulation in the facility or through working with talc, asbestos-containing gaskets, or asbestos-containing brakes. Two of the Bellwether Plaintiffs had asserted claims for colon and tonsil cancer, and the Commission found generally that working at Defendant's facility did not place employees at an increased risk of developing tonsil or colon cancer.

The Industrial Commission also made individual conclusions of law specific to each of the five Bellwether Plaintiffs. For each Bellwether Plaintiff, it denied their claims based on its determination that plaintiff had not shown they were "exposed to asbestos in any such form and quantity, and used with such frequency, as to cause

---

[1] The Opinion and Award captions these as "Findings of Fact Common to All Claims Captioned in Exhibit 1." This Exhibit lists all Consolidated Plaintiffs, including Plaintiff.

asbestosis or any asbestos-related condition," and that they had not shown that they actually contracted asbestosis or any asbestos-related condition.

The Bellwether Plaintiffs appealed, and this Court affirmed the Opinion and Award of the Full Commission. *Hinson v. Continental Tire the Americas*, 267 N.C. App. 144, 832 S.E.2d 519 (2019). We held the Full Commission did not err in:

> (1) Determining Plaintiffs failed to prove a causal connection between employment at the factory and asbestosis; (2) its determination, based upon the facts presented, that Plaintiffs failed to prove that either colon cancer or tonsil cancer were occupational diseases pursuant to N.C.G.S. § 97-53(13); or (3) its unchallenged determination that Plaintiffs were not last injuriously exposed to the hazards of asbestosis at the factory. Further, we hold that the Commission's findings and ultimate findings are supported by competent evidence, and its conclusions and rulings are supported by the findings.

267 N.C. App. at 202-03, 832 S.E.2d at 558.

Following the resolution of the Bellwether Cases on appeal, Defendant moved to dismiss the asbestos-related claims of the remaining 139 Consolidated Plaintiffs. 125 of the Consolidated Plaintiffs voluntarily dismissed their claims, leaving 14 pending claims. These cases were transferred to Deputy Commissioner Erin F. Taylor for disposition of Defendant's Motion to Dismiss. Deputy Commissioner Taylor held a hearing on that Motion at which the parties were not permitted to present additional evidence. The Deputy Commissioner entered an order on 6 July 2022 granting Defendant's motion with respect to all claims for asbestosis but denying it with respect to lung cancer, mesothelioma, and other asbestos-related diseases.

Defendant appealed to the Full Commission, and the parties filed a joint motion to consolidate the cases for that appeal. The Commission ordered the cases to be heard concurrently, but did not consolidate them.

On 13 November 2023, the Full Commission entered an Opinion and Award dismissing all of Plaintiff's claims, holding they were precluded by the results of the Bellwether Cases. It simultaneously dismissed the asbestos-related claims of the other remaining Consolidated Plaintiffs. In all, thirteen plaintiffs appealed to this Court, including two plaintiffs with related cases which were not among the Consolidated Plaintiffs but whose claims were similarly dismissed by the Commission. Our Court consolidated the appeals for hearing.

## Issue

Did the Industrial Commission err in holding Plaintiff's claims were precluded by its decision in the Bellwether Cases and dismissing her case?

## Analysis

Our review of an Opinion and Award from the Industrial Commission is limited to determining whether the findings of fact are supported by competent evidence and whether the conclusions of law are supported by the findings of fact. *Braham v. Food World, Inc.*, 300 N.C. 329, 331, 266 S.E.2d 676, 678 (1980). We review the Commission's conclusions of law de novo. *Bond v. Foster Masonry, Inc.*, 139 N.C. App. 123, 127, 532 S.E.2d 583, 585 (2000). Under de novo review, we consider the

8

matter anew and freely substitute our own judgment for that of the lower tribunal. *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008).

The Industrial Commission held Plaintiff's claims were precluded by its findings in the Bellwether Cases as affirmed by this Court on appeal:

> The Full Commission concludes that the issue Plaintiff Funderburk wishes to pursue (i.e., asbestosis) was decided by the Court of Appeals' September 3, 2019, opinion. In *Hinson,* the Court specifically held that asbestos exposures at Defendant's tire factory did not exceed background levels to which the general public was exposed, and therefore Plaintiffs could not prove an increased risk of contracting asbestosis or any asbestos-related disease during any period of employment at the facility. *Hinson*, 267 N.C. App. at 197, 832 S.E.2d at 554. The Court also held that Plaintiffs failed to prove a causal connection between employment at the factory and asbestosis or asbestos-related disease. *Id.* at 204, 832 S.E.2d at 559. None of the parties to the Bellwether cases appealed the September 3, 2019, opinion, and therefore, these holdings became the law of the case, which the Full Commission is without authority to revisit.

The Commission held Plaintiff was both collaterally estopped from pursuing her claim and that our holding in *Hinson* became the "law of the case," preventing her from showing liability. On appeal, Plaintiff argues she cannot be bound by the decisions in the Bellwether Cases because she was not a party to those cases and because her claims are distinct from those asserted in those cases. She emphasizes that, in the Bellwether Cases, evidence was introduced as to theories of causation common to all plaintiffs and information specific to the Bellwether Plaintiffs' individual claims, but the remaining Consolidated Plaintiffs had no opportunity to

9

introduce evidence specific to their own claims and should be allowed to introduce such evidence. Defendant argues our decision in *Hinson* forecloses Plaintiff's claims, as do the common law doctrines of claim and issue preclusion.

Defendant's argument and the holding of the Opinion and Award are based in framing the bellwether procedure employed in this case as one that controls the outcome in all the Consolidated Cases, or at least places Plaintiff in privity with the Bellwether Plaintiffs such that her claims are precluded under common law doctrines of preclusion. Because Defendant argues any preclusion stems from the relationship between Plaintiff's case and the Bellwether Cases,[2] we address that posture for context before individually addressing collateral estoppel and the doctrine of law of the case. We note that during the pendency of the Bellwether Cases no order was entered describing their relationship to the remaining Consolidated Cases, and in particular no order was entered implying decisions made in the Bellwether Cases would bind the remaining plaintiffs. The extent of written orders concerning the trial plan appears to be the 29 November 2011 Order entered by Deputy Commissioner Gheen, who heard the bulk of the evidence but resigned from the Commission before ruling on the cases. This Order provides only that the "common testimony" presented in the Bellwether Cases will be admissible in all Consolidated Cases, and does not

---

[2] Defendant states in its brief: "Continental is not saying that it is absolved from all liability henceforth and forever. Instead, Continental's position is that the result of the bellwether trial in *this* consolidated proceeding, upheld by this Court, binds *these* Plaintiffs and precludes *them* from pursuing claims against Continental for asbestos-related diseases." (emphasis in original)

address preclusion or the effect of any case on the others.

In the absence of a clarifying written order, we look first to the concept of bellwether cases generally to inform our analysis of whether the Bellwether Cases have a preclusive effect, and then with that context address common law doctrines of preclusion.

I.  Bellwether Cases

"Bellwether" cases are sometimes used to streamline mass tort litigation involving numerous plaintiffs that cannot be resolved in a single class-action suit. A small, ideally representative, sample is chosen from a larger group of cases. These bellwether cases are heard and resolved first, with the intent to educate the parties to the non-bellwether cases as to the value of those claims and enable quicker resolution of those cases. *See Aabbott v. E.I. DuPont de Nemours and Co.*, 54 F.4th 912, 919 n.3 (6th Cir. 2022) (citing Eldon E. Fallon et al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2343 (2008) (explaining the "twin goals" of bellwether trials are to be "informative indicators of future trends [in other cases] and catalysts for an ultimate resolution"); *In re FEMA Trailer Formaldehyde Prod. Liab. Litig.*, 628 F.3d 157, 159, n. 1 (5th Cir. 2010) (" 'Bellwether' trials typically are used to assess whether a class should be certified or to assess a claim's value for settlement purposes[.]"). The bellwether cases provide the remaining plaintiffs with a better understanding of their likelihood of success, and encourage the parties to resolve their cases out of court: "If a representative group of claimants are tried to

verdict, the results of such trials can be beneficial for litigants who desire to settle such claims by providing information on the value of such cases as reflected by the jury verdicts." *In re Chevron*, 109 F.3d 1016, 1019 (5th Cir. 1997).

Defendant argues the bellwether procedure goes beyond information-gathering, such that resolving the Bellwether Cases was not only intended to educate the parties and facilitate resolution of the remaining cases, but also "to establish law that would be binding on the parties in the non-bellwether cases."

As bellwether cases are primarily applicable to mass tort litigation outside of the class action context, their use appears to be relatively rare. The parties have not cited, and we are not aware of, any caselaw from North Carolina courts addressing the use of bellwether cases. The procedure is more commonly used in the federal courts, particularly when multi-district litigation is consolidated before a single district court for hearing. *See, e.g., Aabott,* 54 F.4th 912. We therefore find it instructional to look to the use of bellwether cases in other jurisdictions, especially in federal decisions cited by the parties. Although these opinions are not binding on our decision in this case, they are useful in defining the concept of "bellwether cases" and understanding the intent of the parties and Industrial Commission in their use of that phrase. As we discuss below, our review of this caselaw reveals a clear understanding of bellwether cases as exploratory litigation intending to provide information to the remaining parties to assist in resolving their claims, not as decisions that bind those parties by their results. In rare cases a trial court may

prospectively implement a "binding bellwether" scheme, but the restrictions and stringent requirements placed on such a scheme underscore that bellwether cases in general are not understood to have preclusive effect. In arguing otherwise, Defendant misstates the holdings of several cases.

For example, to support its claim that "the very purpose of the bellwether procedure was to establish law that would be binding on the parties in the non-bellwether cases," Defendant cites a case from the California Court of Appeals, *St. Paul Fire & Marine Ins. Co. v. Amerisource Bergen Corp.,* 295 Cal.Rptr.3d 400 (Cal. Ct. App. 2022). However, that case does not address the preclusion of claims or issues in mass tort litigation based on the results of bellwether cases. Instead, the appellate court in *St. Paul* affirmed a stay imposed by the trial court, holding it was warranted due to pending litigation in West Virginia addressing similar issue with a significant overlap of parties. 295 Cal.Rptr.3d at 413.

It is clear from the text of the opinion that the appellate court in that case does not infer preclusive effect to bellwether cases as a result of their bellwether status. While the West Virginia cases may have had preclusive effect over certain identical claims in California, that preclusion did not stem from the bellwether relationship but from traditional doctrines of claim and issue preclusion in cases with identical parties. *Id.* As the court noted, for certain claims "differences in the parties limit the res judicata effect of the WV coverage proceedings for parties here who are absent there[.]" *Id.* Where the parties were not identical, the West Virginia cases would

provide useful information: "[t]he bellwether effect remains the same under such circumstances; the West Virginia case can serve to educate the parties (whether or not the same) and the trial court about the issues and how to streamline the litigation here." *Id.* The court emphasizes the exploratory nature of bellwether litigation: "Employing a bellwether case in a complex matter like this can serve to winnow and sharpen not only discovery, but claims, defenses, calendaring decisions, motion practice, arguments, hearings or trial, adjudication, indeed every aspect of the litigation process—to the benefit of the parties, the court, and the public alike." 295 Cal.Rptr.3d at 411-412. This function is served even though bellwether cases do not bind later litigation: "The WV coverage action provides a bellwether litigation model for the parties to adhere to—or depart from—as they choose; *the same is true for the court in its adjudicative choices*, as justice requires." 295 Cal. Rptr. 3d at 413 (emphasis added). This case does not recognize any special preclusive effect of bellwether cases.

Defendant argues "rulings from a bellwether case are appropriately applied to remaining cases," citing *In re Lipitor Mktg., Sales Pracs. & Prods. Liab. Litig.,* 892 F.3d 624 (4th Cir. 2018). In that case, the plaintiffs in bellwether cases attempted to introduce testimony from three expert witnesses regarding a causal link between the medication Lipitor and diabetes. 892 F.3d at 630. The trial court ruled the testimony of all three experts in the bellwether cases was inadmissible and granted summary judgment to the defendant in those cases because the remaining evidence did not

establish a genuine issue of material fact as to causation. 892 F.3d at 647. The trial court then entered a series of show cause orders "asking whether any plaintiff in the MDL[3] could submit evidence (expert or otherwise) that would enable her claim to survive summary judgment given the court's prior rulings." *Id.* at 630. No plaintiff was able to introduce evidence sufficient to show causation. *Id.* at 631. The Fourth Circuit affirmed the trial court's grant of summary judgment to the defendant in the MDL cases. *Id.* at 649

This process followed by the trial court in *Lipitor* does not demonstrate that bellwether cases have preclusive effect and, in fact, represents exactly the process *Plaintiff* argues should be followed in this case. The bellwether plaintiffs in *Lipitor* introduced common evidence, which was insufficient to prove liability. The remaining plaintiffs, understanding from the outcome of the bellwether cases that their common evidence was insufficient, were then given an opportunity to introduce additional evidence, including evidence specific to their claims. The court evaluated that evidence, determined it did not raise an issue of genuine material fact, and appropriately granted summary judgment based on that determination. The outcome of the bellwether cases did not control the outcome of the remaining cases, though it informed the litigation process.

Like in *Lipitor,* the parties understand as a result of the Bellwether Cases that

---

[3] In "multi-district litigation," related claims are consolidated in a single district for pretrial proceedings to streamline litigation. 28 U.S.C. § 1407 (2024).

the common evidence in this case is insufficient to support a claim. Accordingly, 125 of the plaintiffs in the remaining Consolidated Cases voluntarily dismissed their claims, implying that their cases relied on the common evidence to show liability. This left only Plaintiff and those other claimants similarly situated, whose cases presumably involve additional theories of causation and liability. Unlike in *Lipitor*, Plaintiff has not been given an opportunity to present additional evidence supporting these theories and had her case discharged on Defendant's Motion to Dismiss—based on preclusion, and not the merit of her evidence.

Defendant also cites *Bay v. Anadarko E&P Onshore LLC,* 73 F.4th 1207 (10th Cir. 2023) to support its contention that rulings in a bellwether case are binding on other plaintiffs. This case is wholly irrelevant to that argument: *Bay* is an appeal by the *bellwether plaintiffs* in a mass trespass action by landowners against the oil and gas company holding the mineral rights to their land. 73 F.4th at 1209. The opinion affirms the district court's judgment as a matter of law in only the individual bellwether case on appeal before the court. 73 F.4th at 1210. The other plaintiffs in the putative class were not party to the appeal, and no issue of preclusive effect of the decision over the other cases is raised by the parties or addressed in the opinion.

Finally, the case Defendant uses to define the term "bellwether" illustrates that the existence of a bellwether case may potentially have some binding effect on other cases, but requires specific actions by the trial court in order to assure all parties due process—actions which were not taken in this case. *In re Chevron U.S.A.,*

*Inc.,* like the other cases cited by Defendant, at no point holds a case at issue is bound by the result of a bellwether case. Instead, it addresses the trial court's plan for hearing a group of tort claims on interlocutory appeal prior to those cases being heard. 109 F.3d 1016, 1019 (5th Cir. 1997). In *Chevron,* over 3,000 plaintiffs filed claims against the defendant for contaminating their property. 109 F.3d at 1017. The district court approved of a trial plan by which a bellwether group of 30 cases, 15 selected by the plaintiff and 15 selected by the defendant, would be heard in a single trial. *Id.* The trial would focus on the individual claims and "the existence or nonexistence of liability on the part of Chevron. . . . Thus, a unitary trial on the issues of general liability or causation as well as the individual causation and damage issues of the selected plaintiff shall occur." *Id.* at 1019.

The Fifth Circuit in *Chevron* rejected the trial court's plan and promulgated a list of requirements for a bellwether trial to have preclusive effect, proposing a special "binding bellwether" trial that is "conceptually separate from issue preclusion because the initial court running the bellwether determines its preclusive effect *in advance* of any subsequent litigation." *Du Pont,* 54 F.4th at 927-28 (emphasis added) (citing Zachary B. Savage, *Scaling Up: Implementing Issue Preclusion in Mass Tort Litigation Through Bellwether Trials*, 88 N.Y.U. L. Rev. 439, 453–54, 456–57 (2013)). In order to create this special "binding bellwether" scheme, the trial court *before* hearing the bellwether cases should identify the common issues to be resolved as well as variables that could exist between different claims in the litigation such as "time,

17

proximity, and contamination levels of exposure to any pollutants that may be present[.]" 109 F.3d 1016, 1019. It should also explain how the verdicts in the bellwether cases are "supposed to resolve liability for the remaining . . . plaintiffs." *Id.* Most importantly, the trial court must find the bellwether cases are a statistically representative sampling of all the plaintiffs' claims:

> [B]efore a trial court may utilize results from a bellwether trial for a purpose that extends beyond the individual cases tried, it must, prior to any extrapolation, find that the cases are representative of the larger group of cases or claims from which they are selected. Typically, such a finding must be based on competent, scientific, statistical evidence that identifies the variables involved and that provides a sample of sufficient size so as to permit a finding that there is a sufficient level of confidence that the results obtained reflect results that would be obtained from the trials of the whole.

*Id.* at 1020. Additionally, the intent of the parties to be bound by the bellwether cases must be clear from the proceedings: "Generally, such a procedure requires that the parties 'clearly memorialize' an agreement to be bound in future trials, no matter the result, to avoid certain due process concerns." *Du Pont,* 54 F.4th at 928 n. 8 (citing *Dodge v. Cotter Corp.*, 203 F.3d 1190, 1200 (10th Cir. 2000)).[4]

---

[4] We note as well that, even given these safeguards, another panel of the same federal circuit court noted skepticism concerning the validity of such a binding bellwether scheme: "While the majority opinion . . . contains language generally looking with favor on the use of bellwether verdicts when shown to be statistically representative, this language is plainly *dicta*, certainly insofar as it might suggest that representative bellwether verdicts could properly be used to determine *individual* causation and damages for other plaintiffs." *Cimino v. Raymark Indus., Inc.,* 151 F.3d 297, 318 (5th Cir. 1998). The court in *Cimino* also notes that such a plan raises concerns related to the Seventh Amendment right to trial by jury, which the *Chevron* court does not address. 151 F.3d at 319.

As the court in *Chevron* saw fit to place such significant procedural requirements on the trial court in order that a bellwether case could have preclusive effect, it is clear that bellwether cases are not understood to have that effect by default. And, without implying that this "binding bellwether" procedure is valid in our courts, we note that none of the *Chevron* guidelines exist in this case. With no order entered in this case, we cannot determine the Bellwether Cases are a representative sample of the Consolidated Cases, and cannot discern the variables impacting liability that may differ from case to case. No order was entered indicating the parties agreed to be bound or that the Industrial Commission understood the purpose of the bellwether plan to bind the non-Bellwether Plaintiffs: the only order entered allowed the common evidence to be admissible in all cases.

Our review of the record and transcript indicate neither the parties nor the Industrial Commission when consolidating these cases understood the Bellwether Cases to bind the Consolidated Plaintiffs such that dismissal of their cases would be appropriate if the claims of the Bellwether Plaintiffs were denied. When discussing the bellwether plan with the parties in conference, Deputy Commissioner Gheen anticipated additional hearings following the Bellwether Cases, stating "I want to come back in here as soon as we get a decision," and proposing locations for taking additional testimony. As both Deputy Commissioner Gillen and the Industrial Commission noted in their Opinions and Awards in the Bellwether Cases, after the Bellwether Cases were heard "[t]he remaining claims would then be in a better

position to be resolved, or they could proceed to abbreviated hearings for the introduction of evidence regarding their individual medical and employment information." Defendant has not identified any statement in the Record, including the transcripts and the Commission's orders during the pendency and resolution of the Bellwether Cases, that indicates the parties intended to be bound or that the Commission understood its decision to be binding.

The status of certain of the Consolidated Cases as bellwether cases did not lend them the special preclusive effect Defendant asserts. We next look to traditional common law doctrines of preclusion, which the Opinion and Award of the Industrial Commission relied on in dismissing Plaintiff's case.

II. Law of the case

The Industrial Commission held our holding in *Hinson* became the law of the case that it was without authority to revisit:

> The Full Commission concludes that the issue Plaintiff Funderburk wishes to pursue (i.e., asbestosis) was decided by the Court of Appeals' September 3, 2019 opinion. . . . None of the parties to the Bellwether cases appealed the September 3, 2019, opinion, and therefore these holdings became the law of the case, which the Full Commission is without authority to revisit.

Under the "law of the case" doctrine, "once an appellate court has ruled on a question, that decision becomes the law of the case and governs the question both in subsequent proceedings in a trial court and on subsequent appeal." *Weston v. Carolina Medicorp, Inc.* 113 N.C. App. 415, 417, 438 S.E.3d 751, 753 (1994). Both

questions of law and issues of fact addressed by the appellate court become the law of the case. *Poindexter v. First Nat'l Bank of Winston Salem*, 247 N.C. 606, 618, 101 S.E.2d 682, 691 (1958). For example, in *Weston* the plaintiff alleged his employer discriminated against him based on race. 113 N.C. App. at 416, 438 S.E.2d 752. The trial court found the employer's actions were not taken on account of race, and on appeal this Court affirmed the trial court's ruling, holding there was sufficient evidence to support that finding. *Id.* On a subsequent appeal in the same case, the plaintiff argued the Civil Rights Act of 1991 retroactively entitled him to relief from judgment, but we held he could not relitigate the issue of racial discrimination because an appellate court had already ruled on that question, making it the law of the case. *Id.*

Only questions that were actually decided by the appellate court bind the parties: "the doctrine of the law of the case contemplates only such points as are actually presented and necessarily involved in determining the case." *Hayes v. City of Wilmington*, 243 N.C. 525, 536, 91 S.E.2d 673, 682 (1956). Statements in appellate opinions "on points arising outside of the case and not embodied in the determination made by the court" are *obiter dicta* and do not determine the law of the case. *Id.*

The purpose of this doctrine is to prevent the parties from relitigating issues that have already been resolved in their case. *Royster v. McNamara*, 218 N.C. App. 520, 530, 723 S.E.2d 122, 129 (2012). This promotes consistency and judicial economy within a case as it moves between our courts, and the doctrine is limited to

subsequent proceedings in the same action: "Once an appellate court has ruled on a question, that decision becomes the law of the case and governs the question not only on remand at trial, but on a subsequent appeal of the *same case.*" *N.C. Nat'l Bank v. Va. Carolina Builders*, 307 N.C. 563, 566, 299 S.E.2d 629, 631 (1983) (emphasis added).

But Plaintiff's case was not before this Court when we resolved the appeal of the Bellwether Cases in *Hinson.* Although Defendant cites numerous opinions addressing the doctrine of "law of the case," none apply it outside the case in which the appellate ruling was made or to a party who was not party to the appellate decision. *See, e.g., Freedman v. Payne*, 252 N.C. App. 282, 800 S.E.2d 686 (2017); *Arizona v. California*, 460 U.S. 605, 75 L.Ed. 2d 318 (1983); *State ex rel. Regan v. Wasco, LLC,* 269 N.C. App. 292, 837 S.E.2d 565 (2020). At the time of our decision in *Hinson,* Plaintiff's case was still pending before the Industrial Commission. There was no notice of appeal filed, nor was there a judgment from which to appeal, and we therefore lacked jurisdiction entirely over Plaintiff's case. *See Crowell Constructors, Inc. v. Strate ex rel. Cobey*, 328 N.C. 563, 563-64, 402 S.E.2d 407, 408 (1991) ("Since the record does not contain a notice of appeal in compliance with Rule 3, the Court of Appeals had no jurisdiction of the appeal.") Accordingly, our ruling in *Hinson* could not become the law of this case.

Defendant argues that because the cases were consolidated for trial, Plaintiff was party to the appeal in *Hinson.* This argument misunderstands the nature of

consolidation. "When cases are consolidated for trial, although it becomes necessary to make only one record, the cases remain separate suits and retain their distinctiveness throughout the trial and appellate proceedings." *Kanoy v. Hinshaw*, 273 N.C. 418, 424, 160 S.E.2d 296, 301 (1968) When a court consolidates multiple actions for judgment, "the actions [do] not become one action. They remain[] separate suits." *Pack v. Newman*, 232 N.C. 397, 400-01, 61 S.E.2d 90, 92 (1950). "Consolidated cases remain distinct as to parties, pleading and judgment and . . . there must be separate verdicts, judgments, or decrees." *TOG Properties, LLC v. Pugh*, 276 N.C. App. 422, 426, 857 S.E.2d 535, 539 (2021) (citing *Hall v. Hall*, 584 U.S. 59, 200 L.Ed.2d 399 (2018)). The fact that there was a joint hearing does not render Plaintiff a party to an appeal when no order or judgment was made in Plaintiff's case and Plaintiff did not notice an appeal.

We acknowledge this Court's decision in *Hinson* purported to treat all Consolidated Plaintiffs as appellants due to the Opinion and Award addressing "common issues." *Hinson*, 267 N.C. App. at 151, n. 8, 832 S.E2d at 528. However, appeal from that decision of the Industrial Commission was only available to the five Bellwether Plaintiffs, and only those five appealed to this Court. We were without jurisdiction to decide issues applicable to other parties, including Plaintiff. Our remit in *Hinson*, as always, was to adjudicate the case before us—in that case, to review the Industrial Commission's determinations of causation and liability as to the Bellwether Plaintiffs. Any language purporting to extend our holding beyond what

was necessary to resolve those issues is therefore dicta: "Language in an opinion not necessary to a decision is obiter dictum and later decisions are not bound thereby." *Trs. Of Rowan Tech. Coll. v. J. Hyatt Hammond Assocs., Inc.,* 313 N.C. 230, 242, 328 S.E.2d 274, 281 (1985).

Additionally, the differences between Plaintiff's claims and those asserted in the Bellwether Cases demonstrate there is insufficient identity of issue to support the preclusion Defendant seeks. An appellate court's ruling on a question "governs the question" in subsequent proceedings. *Weston,* 113 N.C. App. at 417, 438 S.E.3d at 751. It does not govern related but distinct questions or foreclose related but distinct claims. The issue ruled upon in the appellate court must be the same as that precluded in the subsequent hearing.

The Industrial Commission ruled only on theories of causation common to all the Consolidated Plaintiffs and on issues specific to the Bellwether Plaintiffs. Let us assume the trials of the Consolidated Cases were bifurcated such that the Industrial Commission, by ruling in the Bellwether Cases, also ruled on an issue presented in all of the Consolidated Cases. At most, the Commission found the common evidence did not *on its own* show any employees had been exposed to sufficient levels of asbestos to cause asbestosis. It never heard evidence relating to additional theories of causation specific to other plaintiffs or additional illnesses that may be caused by lower levels of exposure. It can be inferred that Plaintiff and the other remaining claimants, because they did not voluntarily dismiss their cases upon learning the

common evidence was insufficient on its own to carry a claim, wish to introduce additional evidence that raises issues not yet addressed by the Commission. The Opinion and Award did not address those issues and cannot preclude the remaining plaintiffs from asserting them. We note that we cannot know what issues these may be, because the remaining plaintiffs were prevented from introducing evidence specific to their claims when the Commission allowed Defendant's Motion to Dismiss. Even assuming the findings relating to the common evidence bind all the Consolidated Plaintiffs, they must be allowed to present additional evidence to distinguish their claims, rather than having their cases dismissed with no opportunity to assert their specific issues.

III.    Collateral Estoppel

In addition to the doctrine of law of the case, the Industrial Commission held it was bound by collateral estoppel. Collateral estoppel, often referred to as "issue preclusion," "is designed to prevent repetitious lawsuits over matters which have once been decided and which have remained substantially static, factually and legally." *King v. Grindstaff*, 284 N.C. 348, 356, 200 S.E.2d 799, 805 (1973). Accordingly, "parties and parties in privity with them . . . are precluded from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination." *Id.* "Law of the case" and collateral estoppel are similar, but they "differ in one key respect: [collateral estoppel] prevents re-litigation in a *future*

lawsuit, while the law-of-the-case doctrine prevents re-litigation of an issue in the *same* lawsuit." *Fish v. Stetina*, 913 S.E.2d 236, 242 (2025).

A party seeking to establish collateral estoppel must show: (1) the earlier suit resulted in a final judgment on the merits; (2) the issue in question was identical to an issue actually litigated and necessary to the judgment; and (3) that both the plaintiff and defendant were either parties to the earlier suit or were in privity with the parties. *Thomas M. McInnis & Assocs. v. Hall*, 318 N.C. 421, 429, 349 S.E.2d 552, 557 (1986).

"To determine whether collateral estoppel applies in the present cases, it must first be decided whether the parties in these suits and those in the former . . . litigation are the same, or stand in privity to the parties in the former litigation." *King*, 284 N.C. at 357, 200 S.E.2d at 805. Because Plaintiff was not a party to the Bellwether Cases, we must determine if she was in privity with those plaintiffs. In general, "privity involves a person so identified in interest with another that he represents the same legal right." *State ex rel. Tucker v. Frinzi*, 344 N.C. 411, 417, 474 S.E.2d 127, 130 (1996). To be in privity, the interests of two parties must be so intertwined that the estopped party "was fully protected in the first trial" because his "interest has been legally represented." *Cnty. of Rutherford By & Through Child Support Enf't Agency ex rel. Hedrick v. Whitener*, 100 N.C. App. 70, 76, 394 S.E.2d 263, 266 (1990) (citing 46 Am.Jur.2d *Judgments* § 686). Accordingly, privity "rests on some actual mutual or successive relationship to the same right of property." *Masters*

26

*v. Dunstan*, 256 N.C. 520, 525, 124 S.E.2d 574, 577 (1962) (citing 72 C.J.S. *Privities*, 956-958). Privity requires "absolute identity of interest," *id.,* and cannot be established "from the mere fact that persons may happen to be interested in the same question or in proving or disproving the same set of facts, or because the question litigated was one which might affect such other person's liability as a judicial precedent in a subsequent action." *Tucker*, 344 N.C. 411, 47, 474 S.E.2d 127, 130 (1996) (citing 47 Am.Jur.2d *Judgments* § 663 (1995).

Here, Plaintiff was not so identified in interest as to establish privity with the Bellwether Plaintiffs. Their legal interest rested in their workers' compensation claims; Plaintiff's rested in her own, stemming from her husband's alleged exposure and injuries. Each plaintiff's goal in this case was to prove their individual injuries arose out of and in the course of their employment: the Bellwether Plaintiffs have no legal interest in Plaintiff's individual claim. While there is factual overlap between the claims, the interests are not identical. This difference in legal interest would remain even if the evidence underlying each claim were identical.[5] However, examination of the actual issues in each case further emphasizes the distinction between the Plaintiff's claims and those of the Bellwether Plaintiffs and the legal interests represented by each.

---

[5] See, e.g., *Goins v. Cone Mills Corp.*, 90 N.C. App. 90, 367 S.E.2d 335 (1988) (holding as widow was not a party to husband's claim for lifetime disability benefits she was not collaterally estopped from litigating the issue of total permanent disability in claim for death benefits).

In addition to privity, collateral estoppel requires the precluded issue to be identical to an issue actually litigated and necessary to the previous judgment. *Hall*, 318 N.C. at 429, 349 S.E.2d at 557. As Plaintiff was prevented from presenting evidence to develop her claim, we cannot know exactly the facts she asserts to establish her husband suffered illness as a result of his employment. But her Form 18B alleges he suffered from lung cancer, unlike any of the Bellwether Plaintiffs. The Industrial Commission's findings do not address lung cancer because they are limited to the illnesses presented by the Bellwether Plaintiffs, primarily asbestosis. While the Commission found plaintiffs were not exposed to asbestos in sufficient amounts to contribute to asbestosis, it additionally noted other illnesses, such as mesothelioma, "generally form at a lower dose" than asbestosis. Additionally, Plaintiff asserts she was prepared to offer evidence as to additional theories of exposure specific to Decedent in his individual role as a pipefitter and welder and therefore never presented by the Bellwether Plaintiffs. Even if the Industrial Commission had held, as Defendant seems to assert, that there was insufficient asbestos in the factory to cause *any* illness to *any* employee, this was neither litigated in the Bellwether Cases nor necessary to resolve them. The issues in Plaintiff's case are different from those in the Bellwether cases. Because there is no privity and no

identity of issues, collateral estoppel is inappropriate.[6]

IV.    Res judicata

Defendant also argues *res judicata* bars Plaintiff's claims. Under *res judicata,* or "claim preclusion," "a final judgment on the merits in a prior action will prevent a second suit based on the same cause of action between the same parties or those in privity with them." *Perryman v. Town of Summerfield*, 899 S.E.2d 884, 893 (2024). Where collateral estoppel prevents relitigation of issues actually litigated and necessary to the outcome of the prior action, *res judicata* prevents the assertion of claims that were or could have been asserted in a prior action between the parties or those in privity with them. *Hall* at 428, 349 S.E.2d at 556. Like collateral estoppel, *res judicata* requires a final judgment on the merits and identity of parties. *Id.* Rather than identity of issue, *res judicata* applies when the case represents "a second action upon the same claim or demand."

As discussed above, Plaintiff was neither party to the Bellwether Cases nor in privity with the Bellwether Plaintiffs. Nor is her claim one that was or should have been adjudicated in those cases: her claim is a separate workers' compensation claim

---

[6] If Plaintiff, or any of the remaining consolidated plaintiffs, presents *no* additional evidence beyond the common evidence introduced in the Bellwether Cases and no arguments specific to her claim, her claims may be precluded under collateral estoppel. With no specific evidence, her only interest would be in showing the common evidence demonstrated employees were at a higher risk of illness. As this interest was legally represented by the Bellwether Plaintiffs, it may then be the case that (1) they and Plaintiff were in privity because they represent the same legal right, and (2) an identical issue was actually litigated. This satisfies the requirements for invoking collateral estoppel. However, without an opportunity for Plaintiff to provide additional evidence, it is impossible to determine that such identity of issue exists.

for a different employee entirely than those in the Bellwether Cases. Plaintiff's case is not barred by the doctrine of claim preclusion.

V.   Consent Order

Defendant argues Plaintiff in the 26 October 2016 Consent Order stipulated to litigating the issue of exposure in the bellwether trial. This misrepresents the purpose of the Consent Order, which was entered into by the parties to facilitate the transfer of the case from Deputy Commissioner Gheen, who had heard the evidence presented in the consolidated cases, to Deputy Commissioner Gillen. After the cases were transferred to Deputy Commissioner Gillen, this Court published its opinion in *Bentley v. Jonathan Piner Construction* which held, as a matter of first impression, the Workers' Compensation Act does not permit one Deputy Commissioner to consider the evidence in a case and another to render an Opinion and Award. 249 N.C. App. 466, 471, 790 S.E.2d 379, 382 (2016).[7]

Accordingly, in order to avoid rehearing evidence presented over the course of two years of hearings, the parties consented to the transfer to Deputy Commissioner Gillen and stipulated they did not object under *Bentley:*

> All parties stipulate to the transfer of these cases from Deputy Commissioner Gheen to Deputy Commissioner Gillen. No party requests any rehearing. The parties stipulate that all parties have had a full opportunity to be heard on the issues now pending before the Commission, and stipulate that review of the transcripts and the

---

[7] This opinion was superseded by our later decision in that case. 254 N.C. App. 362, 802 S.E.2d 161

> evidentiary record by Deputy Commissioner Gillen provides him with the evidence he needs to make a complete determination of the matters in dispute. The parties consent, agree and stipulate to Deputy Commissioner Gillen's issuance of Findings of Fact and Conclusions of Law in an Opinion and Award based upon the transcripts of the testimony and matters in the record consistent with the law and rules of evidence.

The parties thereby agreed no additional presentation of evidence was required for Deputy Commissioner Gillen to issue decisions in the Bellwether Cases.

Defendant attempts to transform this agreement into a stipulation that Deputy Commissioner Gillen decide the question of exposure as to all plaintiffs even though none besides the Bellwether Plaintiffs had had an opportunity to present evidence specific to their own case. To support this, Defendant cites a portion of the Order that summarized the procedural posture thus far:

> While still assigned to Deputy Commissioner Glenn, these cases were postured so that there would be an "initial six" cases to be tried together as bellwether cases, with evidence common to all one hundred and forty-four cases also presented. The claims were set for hearing, in part, to litigate the issue of exposure and to take common evidence relating to the nature and extent of any asbestos exposure to employee-plaintiffs working in the facility.

Without more, we cannot read this portion of the Consent Order as constituting a stipulation allowing the Deputy Commissioner to decide whether or not any plaintiff was exposed to asbestos. "While a stipulation need not follow any particular form, its terms must be definite and certain in order to afford a basis for judicial decision." *Moore v. Richard W. Farms, Inc.,* 113 N.C. App. 137, 141, 437 S.E.2d 529

(1993). This provision could be interpreted in multiple ways, most likely as noting the intent of the parties to "litigate the issue of exposure" by providing evidence relating to theories of exposure common to all plaintiffs.

This interpretation is all the more likely given the placement of the language identified by Defendant: within the section of the Order discussing the history of the case and the process of the evidentiary hearings that had already occurred. This section does not address rulings by the Deputy Commissioner or the effects thereof, nor does it recite stipulations of the parties.

Later, in a separate section of the Order, the parties enumerate their stipulations, all of which relate to the transfer of the case to Deputy Commissioner Gillen. In this section, the parties stipulate "all parties have had a full opportunity to be heard on the issues now pending before the Commission." In the context of the Order, the meaning of this statement is clear: the parties would not submit further evidence or arguments regarding the Bellwether Cases or theories of causation common to all Consolidated Plaintiffs—the "issues now pending before the Commission." Defendant's suggested meaning, that each of the 144 plaintiffs were implicitly waiving the right to present any evidence specific to their own case, strains credulity. At no point does the Order state that the non-Bellwether Plaintiffs intended to be bound by the results of the Bellwether Cases. We will not assign such significant meaning to language that is, at best, ambiguous, and found in an unrelated Order.

VI.   Due Process

Plaintiff additionally argues the Industrial Commission's dismissal of her claim violates her right to due process.

> "Due process" has a dual significance, as it pertains to procedure and substantive law. As to procedure it means "notice and an opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before a competent and impartial tribunal having jurisdiction of the cause."

*State v. Smith*, 265 N.C. 173, 180, 143 S.E.2d 293, 299 (1965).

The dismissal of Plaintiff's case left her without opportunity to be heard. Under our Workers Compensation Act the burden rests on the employee seeking benefits to prove that his disease "was incident to or the result of the *particular* employment in which [he] was engaged." *Booker v. Duke Medical*, 297 N.C. 458, 475 (1979). *See also Holley v. ACTS, Inc.*, 357 N.C. 228, 231 (2003). More specifically, a plaintiff's "evidentiary burden" in this regard is "to establish that his employment exposed him to a greater risk of contracting his disease relative to the general public." *Chambers v. Transit*, 360 N.C. 609, 614 (2006). Plaintiff was given no opportunity to meet this burden.

Prior to the Opinion and Award in the Bellwether Cases, the parties presented evidence as to common theories of causation and specific evidence related to the claims of the Bellwether Plaintiffs. Evidence specific to Plaintiff's claim, as with all other non-Bellwether plaintiffs, was never heard.

While Defendant now argues the purpose of the bellwether process was to bind the individual plaintiffs, this is not supported by the law or record. And we observe that engaging in exploratory, rather than binding, bellwether litigation *was* extremely effective at streamlining this mass tort action. Faced with an untenable number of claims to litigate before the Industrial Commission, the parties agreed on a plan to expedite the process. A handful of bellwether cases would proceed first, with the parties presenting both evidence specific to those cases and relating to theories of asbestos exposure common to all claims. The goal of this process, as in bellwether litigation generally, was to educate the parties as to the value of the pending claims and encourage their resolution. This process was a success. The Industrial Commission held the evidence produced by the Bellwether Plaintiffs was insufficient to support their claims. Understanding from this that they could not rely on the common evidence regarding asbestos exposure to make their cases, 125 of the remaining claimants—the vast majority—voluntarily dismissed their claims. This left only a handful of claimants, including Plaintiff, who believed the evidence specific to their cases separated their claims from the others and made them worth pursuing even though the common evidence was insufficient to support a claim. These claimants have not yet had an opportunity to present this evidence to the Industrial Commission. None of the doctrines identified by Defendant preclude their claims, and due process demands they have their day in court.

Thus, Plaintiff's claim is not precluded by the prior Bellwether Claims. Therefore, Plaintiff is entitled to an opportunity to present additional evidence, if any, in support of her claim. Consequently, the Full Commission erred in dismissing Plaintiff's claim on this basis.

## **Conclusion**

For the foregoing reasons, the Opinion and Award of the Industrial Commission is reversed and this matter is remanded to the Industrial Commission for further proceedings in which the Commission shall allow the parties to produce additional evidence as to their claims and defenses.

REVERSED AND REMANDED.

Judge WOOD concurs.

Chief Judge DILLON dissents by separate opinion.

DILLON, Chief Judge, concurring in part and dissenting in part.

Plaintiff brought this workers' compensation matter, alleging that decedent Mr. Funderburk contracted asbestosis and lung cancer from exposure to asbestos while employed by Defendant. The Full Commission dismissed Plaintiff's claims based on our opinion in *Hinson v. Cont'l Tire*, 267 N.C. App. 144 (2019). The Full Commission determined that, based on the "law of the case" doctrine, Plaintiff is barred by our decision in *Hinson* to pursue any claim based on alleged exposure to asbestos as the factory.

The majority holds that Plaintiff is not barred by *Hinson* to pursue her claims. I agree, however, with the Commission based on the reasoning below that our holding in *Hinson* bars Plaintiff's claims for *any* asbestos-related diseases. Therefore, my vote is to affirm the Commission's order dismissing Plaintiff's claims.

Approximately 150 individuals who had worked at Continental Tire's Charlotte factory filed workers compensation claims seeking benefits for asbestos-related illnesses. All claimants are/were represented by the same counsel. *Most* of these matters, including Plaintiff's claim, were consolidated before the Commission.

As some factual and legal issues were thought to be common to all consolidated cases, the parties in those cases agreed that six of the matters would be tried first. Accordingly, counsel for the claimants selected six cases – referred to in the record before us as the "bellwether" cases – to be tried together first, while the remaining consolidated cases (including the case before us) would be stayed pending the

conclusion of the bellwether cases. (The number of bellwether cases was ultimately reduced to five, as one bellwether claimant voluntarily dismissed his claim.)

Under this bellwether procedure, the parties in all the consolidated cases agreed that they would jointly offer evidence common to all; e.g., evidence regarding asbestos levels at the factory relative to asbestos levels experienced in the general public. And *each* bellwether claimant would then offer evidence specific to his exposure to asbestos in the factory and his own medical condition.

Under this approach, the Commission would *first* make findings as to the asbestos levels at the factory; that is, whether the Commission determined that one working at the factory had greater risk to asbestos exposure than the risk to exposure in the general public. The Commission, *next*, would consider the evidence offered by each bellwether plaintiff unique to him to determine whether the bellwether claimant had shown he suffered from an asbestos-related disease and that said disease was caused by his employment at the factory.

After 38 days of hearings held over a two-year period and ending in February 2013, a deputy commissioner entered an order denying the claims of the bellwether claimants. Several years later, in January 2018, the Full Commission upheld the deputy commissioner's denial of the claims of the five bellwether cases.

The following year, in September 2019, our Court affirmed the Commission's decision and reasoning in the bellwether cases. *See Hinson v. Cont'l Tire*, 267 N.C. App. 144, 203-04 (2019).

The issue in this appeal is whether Plaintiff's claims are barred by the result in the bellwether cases as affirmed by our Court in *Hinson*.

In these matters, each claimant sought an award based on a disease or diseases suffered due to exposure to asbestos while working at the factory.

Our Supreme Court has held that under our Workers Compensation Act the burden rests on the employee seeking benefits to prove that his disease "was incident to or the result of the *particular* employment in which [he] was engaged." *Booker v. Duke Medical*, 297 N.C. 458, 475 (1979). *See also Holley v. ACTS, Inc.*, 357 N.C. 228, 231 (2003). And a plaintiff's "evidentiary burden" in this regard is "to establish that his employment exposed him to a greater risk of contracting his disease relative to the general public." *Chambers v. Transit*, 360 N.C. 609, 614 (2006).

In the bellwether matters, the Full Commission recognized that *all* consolidated claimants, including Plaintiff, were parties for purposes of its findings and conclusions regarding the issues common to all claims.

On appeal, we expressly stated we were treating all consolidated claimants, including Plaintiff, as appellants with respect to our review of the issues common to all consolidated cases (as all consolidated claimants were parties to the orders being appealed). *Hinson*, 267 N.C. App. at 151, n. 8 ("Because the 'common issues' sections of the 25 January 2018 opinions and awards apply to all Consolidated Plaintiffs, we treat them as appellants as well."). And we stated that a further hearing for any non-bellwether claimant among the consolidated claimants would only be necessary if it

was first found that asbestos levels at the factory were sufficient to cause or contribute to *any* "alleged asbestos-related disease":

> *The "Bellwether Cases" Approach*
>
> As noted above, in the ordinary case—because it is the plaintiffs' burden to prove they suffered from compensable occupational diseases—the Commission would *first* determine whether the plaintiffs had met their burden of proving they suffered from an occupational disease. If the plaintiffs failed to meet that burden, the Commission could deny their claims without making any further determinations such as compensability and liability.
>
> Pursuant to the bellwether cases approach, review of the medical evidence for the alleged asbestos-related diseases for all Consolidated Plaintiffs will only be necessary *if* Plaintiffs first prove that working in the factory exposed them to asbestos, in a form and in quantities, that could have caused the alleged asbestosis; or caused—*or significantly contributed to—the development of other alleged asbestos-related diseases*.

*Id.* at 171-72 (internal citations and marks omitted) (emphasis added).

Interpreting the Full Commission's bellwether orders, we then stated the Commission determined in those orders that "employment in the factory did not expose [any of the consolidated] Plaintiffs to airborne asbestos of a kind and in amounts sufficient to cause or contribute to asbestosis." *Hinson*, 267 N.C. App. at 172. This statement could be construed as only barring asbestosis claims. However, we added a footnote to the word "asbestosis", which states:

> "*I.e.,* that any alleged asbestos-related disease could not have 'arisen out of' employment with Defendant[,]"

*Id.* n. 15 (emphasis added).

"I.e." in the footnote is an abbreviation for the Latin phrase "id est", meaning "that is" or "in other words, and is used to further define the word to which it refers. *See, e.g.*, *Edwards Lifescience v. Cook*, 582 F.3d 1322, 1335 (Fed. Cir. 2009) (stating that "use of 'i.e.' signals an intent to define the word to which it refers").

Accordingly, the sentence in the main text should rightly be read as holding that asbestos levels at Defendant's factory were not sufficient to cause or contribute to *any* asbestos-related disease alleged by any of the consolidated plaintiffs, including Plaintiff. In sum, I conclude *Hinson* affirmed a determination that the consolidated Plaintiffs failed to meet their burden to show employment at the factory exposed anyone to asbestos sufficient to cause any asbestos-related disease.

Indeed, in *Hinson*, we noted that all consolidated claimants, including Plaintiff, conceded that the "Commission [had] made findings and conclusions regarding the amount of exposure Plaintiffs had to asbestos and whether the level was sufficient to cause a disease," *id.* at 173, and that "[t]he Commission specifically and repeatedly determined that Plaintiffs were not exposed to asbestos in such form and quantity, and used with such frequency, as to cause asbestosis *or any asbestos-related condition.*" *Id.* at 173-74 (internal marks omitted) (emphasis added).

It may be that the Commission orders reviewed by the *Hinson* panel could be interpreted more narrowly, as merely deciding that the consolidated plaintiffs failed to prove asbestos at Defendant's factory could have caused certain specific diseases

*DILLON, C.J., dissenting.*

alleged by the bellwether plaintiffs, including asbestosis. However, none of the consolidated plaintiffs, including Plaintiff, appealed our decision in *Hinson* or sought our Court to clarify or modify that decision. Accordingly, our interpretation of the Commission's bellwether orders in *Hinson* became the law of the case and, therefore, binding on all the consolidated plaintiffs. I, therefore, conclude the Full Commission did not err in dismissing Plaintiff's claim. *See, e.g., Crowell v. State ex. rel. Cobey*, 342 N.C. 838, 842 (1996) (issues which become the "law of the case" are binding in subsequent proceedings in the matter). In so concluding, I note that had the Commission believed Plaintiff's evidence concerning the level of asbestos at the factory, Continental Tire would have been bound by the findings concerning that issue in Plaintiff's case. *See Moore v. Humphrey*, 247 N.C. 423, 430 (1958).